# JOSEPH F. RIDLER v. SEARS, ROEBUCK & COMPANY. RAY LIND AND OTHERS, RESPONDENTS.[1]

June 27, 1947.

No. 34,370.

---

[1]Reported in 28 N. W. (2d) 859.

*Samuel P. Allen, Fred A. Ossanna,* and *Carl K. Lifson,* for relator.

*J. E. Mullen,* for respondent employe.

*Reynolds & McLeod,* for respondents Vincent Fitzgerald, *d. b. a.* City Transfer Company, and New Amsterdam Casualty Company, his insurer.

Thomas Gallagher, Justice.

Certiorari upon the relation of Sears, Roebuck & Company, employer, to review the decision of the industrial commission awarding Joseph F. Ridler, employe, compensation for injuries arising out of an accident which occurred on August 14, 1945.

The facts are as follows: Employe at the time of the accident was employed by relator as a clerk or salesman in its farm store at Rochester. Ray Lind was division manager of this store and in charge of employe. This store handled merchandise suitable for farm trade, including refrigerated coolers. An alley in the rear thereof permitted delivery of merchandise to and from the store through rear entrances thereto.

Two doors away and served by the same alley was another building, the front portion of which was occupied by relator for storage purposes. The rear portion thereof was occupied by a partnership comprised of Lind and Clyde Swim, an employe of relator, engaged in selling merchandise not handled by relator. The participation of Lind and Swim in the partnership was with the knowledge and consent of relator. One of the items handled by the partnership was a deep-freeze unit, similar in form, size, and appearance to the cooler handled by relator. The door connecting the front portion of this building, occupied by relator, with the rear portion, occupied by the partnership, had been closed and locked, and merchandise had been piled in front of it so that no passageway existed between the two. On the opposite side of the alley was a parking lot maintained by relator, where its customers might load their autos or trucks with merchandise purchased by them at relator's store.

By the terms of his employment, employe was subject to the authority and direction of Lind, relator's store manager. As a part of his duties, in addition to selling merchandise, he was required to assist customers in loading their purchases onto their cars on the rear parking lot and to help unload merchandise delivered to the store when it was too heavy for the regular transfer employes to handle.

Shortly prior to the accident, Lind and Swim had exhibited one of their deep-freeze units, weighing from 400 to 700 pounds, at the county fairgrounds. On August 14, 1945, the day of the accident, they had employed a transfer firm known as the City Transfer Company to return the unit to the partnership premises above described. The transfer company arrived there with the unit about 2 p. m. that day. Two of its employes were then on its truck.

Employe here was then just returning from the parking lot, where he had assisted a customer of relator in loading merchandise. As he crossed the alley, an employe of the transfer company addressed him, saying, "Could you give us a lift—get this off—too heavy for two of us." Employe then proceeded to help unload the unit. Later he was joined in the work by Lind and another employe of relator, who, together, had been assisting other customers of relator on the rear lot. These three, with the two transfer company employes, removed the heavy unit from the truck on rollers to the rear door of the partnership premises. In setting it down, the men carrying it, except the employe here, suddenly released it in such a way that the unit fell on the latter's hand, crushing his finger, severing a tendon therein, and resulting in an 80-percent loss of use of his right ring finger, for which the industrial commission allowed the recovery here protested.

Employe's action was brought against relator, the transfer company and its insurer, and the partnership. At the close of the proceedings before the referee, relator alone was held liable for employe's injuries under the act. Relator appealed to the commission, which affirmed the findings of the referee. Therein the commission determined:

"* * * There is no evidence that Ridler was asked to assist by either Lind or Swim, or that he expected any pay from them or City Transfer Company. Nor is there any evidence that the driver in charge of the truck had authority to engage extra help on behalf of his employer, City Transfer Company. The emergency necessary to give rise to an implied authority to hire, within the rule of State ex rel. Nienaber vs. District Court of Ramsey County, 138 Minn. 416, 165 N. W. 268 [L. R. A. 1918F, 200], 17 B Minn. W. C. D. 48, is lacking. For these reasons, we find no basis for holding either City Transfer or Lind and Swim the employer of Ridler when the accident occurred."

The commission further determined:

"We have concluded that the temporary assistance rendered by Ridler on the occasion in question had the tacit, if not expressive, approval of his employer, Sears Roebuck. In so doing we have relied mainly upon the fact that at the time of the accident there were three Sears Roebuck employes assisting in moving the freezer, one of whom was Ridler's immediate superior, Lind. As manager of the farm store Lind occupied a position of responsibility with his employer. By his actions he sanctioned this stepping aside temporarily from the employment. This was not a departure which removed Ridler from the scope of his employment and terminated the relationship of employer and employe."

The record does not indicate whether employe was aware of the fact that the premises where the accident took place were occupied by the partnership. The evidence is undisputed that neither the transfer company nor the partnership was the employer of the injured employe. It is also undisputed that neither Lind nor Swim asked employe to assist in the removal of the deep-freeze unit to their premises. There is no evidence to indicate that employe expected to receive any pay from them or from the transfer company. No express authority was shown to be in the employes of the transfer company on behalf of relator to employ the injured employe at the time of the accident. The accident did not take place on the

premises of relator. The latter had no interest in the return of the deep-freeze unit to Lind and Swim and gave no directions to employe to assist therein.

Relator asserts here that the injury is not compensable because it did not occur in connection with employe's work or while he was performing work for his employer or anything incidental thereto, but, on the contrary, occurred while he was actually engaged in the interests of either (1) the transfer company, a stranger to his employer, or (2) the independent private interests of Lind, his superior employe.

■ The workmen's compensation act, M. S. A. § 176.02, limits the protection afforded thereby to personal injuries arising out of and in the course of employment. Section 176.01, subd. 11, provides that the foregoing clause is declared "not to cover workmen except while engaged in, on, or about the premises where their services * * * require their presence as a part of such service, at the time of the injury, and during the hours of service as such workmen; * * *."

■ Employe contends that the work in which he was engaged at the time of his injury was incidental to his employment and had at least the tacit approval of his immediate superior, who assisted therein, and hence that relator was liable for such injury under the compensation act. He relies for support in this contention upon O'Rourke v. Percy Vittum Co. 166 Minn. 251, 207 N. W. 636; McKenzie v. Railway Express Agency, Inc. 205 Minn. 231, 285 N. W. 529; Novack v. Montgomery Ward & Co. 158 Minn. 495, 198 N. W. 290; and Kaletha v. Hall Merc. Co. 157 Minn. 290, 196 N. W. 261.

Examination of the cited cases indicates that they are clearly distinguishable upon the facts. In the O'Rourke case, the employe was given *specific* directions by his superior to perform certain personal services for persons other than his employer. It was held that such services, undertaken upon the specific directions of the employe's superior, were covered by the act, since the employe had the right to assume that they were performed for his employer. Here, there were neither express nor implied directions or instructions to

employe from relator or anyone representing relator to perform for the third party the services out of which the injury arose.

In both the McKenzie and Kaletha cases, the decisions were based upon the rule that acts of an employe for his personal comfort and convenience and while employed are incidental to the services required of him, and hence that the injuries sustained while performing such acts are compensable, even though not occurring on the immediate premises where the services are required. Here, the acts out of which the injury arose were not incidental to the employe's services, but were entirely outside the scope thereof, for the benefit of a third person, and entirely unrelated to employe's rsponsibilities to his employer.

In the Novack case, it was held merely that the sphere of employment extends to and protects an employe while within the premises of his employer and on the way to or from the performance of his specific duties. Here, employe was not within such premises nor on his way to or from the performance of his specific duties.

█ It is apparent that when the employe here, without either express or implied instructions from his employer, or anyone representing the latter, voluntarily left his employment to perform services exclusively for the benefit of a third party, he removed himself for the time being from the protection of the compensation act, and that the injury he sustained in performing such voluntary services for another did not arise out of, nor was it incidental to, the services or employment for which he was engaged by his employer. As stated in Kennelly v. Stearns Salt & Lbr. Co. 190 Mich. 628, 630-631, 157 N. W. 378, 379:

"* * * We do not think it can be said that while claimant was engaged in this service he was engaged in his regular employment. * * * When he was ordered to go with the fire warden, he left his work temporarily to discharge a duty which was incumbent upon him as well as upon every other citizen similarly situated. We do not think it can be said that his injury arose out of his employment or during the course of it. * * *

"* * * Some point is also made because his foreman or superintendent directed some of his acts while at the fire. This quite likely was the result of habit, rather than of authority upon the part of the foreman or superintendent. The claimant's own testimony shows that his work was directed by the fire warden."

State ex rel. Albert Lea Packing Co. Inc. v. Industrial Comm. 155 Minn. 267, 193 N. W. 450, might support employe's contentions were there evidence here that he had been given either express or implied instructions by his employer or the latter's representative to perform the services in which he was injured. Since there were no such instructions, we are compelled to hold that the injury did not arise out of or in the course of his employment, nor was it incidental thereto so as to be covered by the act insofar as relator here is concerned.

Reversed.

