## BERNARD G. HURLEY v. WILLIAM H. CHAFFEE AND ANOTHER, d. b. a. MINNESIPPI DECORATORS, AND OTHERS.[1]

June 16, 1950.

No. 35,180.

[1]Reported in 43 N. W. (2d) 281.

*J. Frank Boyles* and *S. S. Larson,* for relator.
*John A. Goldie,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Certiorari to review an order of the industrial commission award-
ing compensation to Bernard G. Hurley, who was injured on Sep-
tember 21, 1948, while employed as a painter by William H. Chaffee
and Thomas T. Hawkes, a copartnership doing business as Minne-
sippi Decorators. Chaffee and Hawkes, individually and as copart-
ners, were adjudged bankrupt on October 14, 1948.

The commission held that workmen's compensation policy No.
Z201242 issued January 9, 1948, by relator, United States Fidelity
& Guaranty Company, as insurer, to William H. Chaffee and Thomas
T. Hawkes, copartners doing business as Minnesippi Decorators, as

insured, was in effect at the time of the accident, and directed the employer and the insurer to make payment of the award.

It is insurer's contention here (1) that at the time of the accident the policy had been cancelled; (2) that the accident did not arise out of and in the course of the employment described; and (3) that an item of $54 compensation paid to employe by the employer, which was directed to be repaid employer by insurer, should have been ordered paid to employer's trustee in bankruptcy.

The policy was issued by the United States Fidelity & Guaranty Company to the employer on January 9, 1948. By its terms, it was to be in effect for one year from that time. The employer made arrangements, through insurer's local representative, to have the premiums due thereon financed by The Del Mar Company of Baltimore, Maryland, and the latter paid insurer the full premium due on said policy.

In conjunction with the financing arrangements, employer executed a note and power of attorney in favor of The Del Mar Company which provided:

"* * * The holder hereof [Del Mar Company] is irrevocably authorized, * * * (1) to accept from the insurer any notice of cancelation * * *, and (2) to cause or negotiate with the insurer for cancelation of any or all such policies * * *."

Subsequently, employer failed to make the required payments to The Del Mar Company, and on July 26, 1948, the latter prepared the following written notice directed to the employer and insurer cancelling the policy:

"As previously advised, this Company holds the note of the above assured and an assignment and power of attorney authorizing this Company to cause cancellation of the above described policy (ies) on default in the payment of any installment due on said note, and to receive and receipt for all moneys due the assured under said policy (ies).

"Said assured is now in default in the payment of an installment due on said note and we therefore cancel the above described policy

(ies) effective at the beginning hour specified in the policy (ies) on the date following the date of this letter, or on such later date (the minimum period in any event) as may be required by law and request you to pay this Company the return premium."

Testimony was presented that the employer did not receive this notice, or in fact any notice from anyone to the effect that the policy had been cancelled, until some time after the accident.

The policy contains a provision as follows:

"This policy may be canceled at any time by either of the parties upon written notice to the other party stating when, not less than ten days thereafter, cancellation shall be effective. * * * Notice of cancellation shall be served upon this employer as the law requires, but, if no definite requirement, notice mailed to the address of this employer herein given shall be sufficient notice, * * *."

The Minnesota compensation rating bureau, of which United States Fidelity & Guaranty Company, the insurer, was a member, has among its rules the following (§ 2, paragraph E):

"Notice shall be filed immediately with the bureau with reference to policies cancelled or not taken, and policies in any way revised or changed. Notice of cancellation when cancellation is for non-payment of premium shall at all times specifically state (cancelled for non-payment of premium)."

Subsequent to the notice of July 26, 1948, insurer returned the unearned premium on the policy to The Del Mar Company, but did not send the bureau the notice of cancellation provided for in the aforesaid section until November 4, 1948, long after the accident.

On appeal, insurer asserts that the bureau's regulation requiring filing of notice of cancellation as above set forth was not binding upon it, and that The Del Mar Company, under its power of attorney, pursued an authorized method of cancellation, and hence thus terminated and cancelled the policy prior to the accident.

The facts surrounding the accident are as follows: Employe had been engaged by employer to perform work as a painter on the premises of Twin City Concrete Pipe Company under a contract

between the latter and employer. At the direction of his foreman, who also was an employe of Minnesippi Decorators, employe attempted to remove some large pulleys partially interfering with his work. The pulleys could have been pushed aside, as their complete removal was unnecessary except for the convenience of the Twin City Concrete Pipe Company. While thus removing them, the injuries here involved were sustained.

■ We are of the opinion that until insurer filed with the compensation insurance bureau written notice of its cancellation of the described policy, as required by § 2, paragraph E, of the rules of the bureau, the policy remained in force and effect at least as to the employes covered thereby. Since such notice of cancellation was not filed by the insurer until November 4, 1948, it follows that the policy was in effect on September 21, 1948, the date on which employe sustained his injuries.

■ M. S. A. 79.12 provides for the creation and organization of the Minnesota compensation insurance bureau. Section 79.11 prescribes that, among its functions, the bureau is "To assist the compensation insurance board and insurers in approving rates, determining hazards *and other material facts in connection with compensation risks,* * * *." Section 79.17 imposes upon the bureau the duty of classifying compensation risks. Section 79.24 requires the bureau *to provide coverage for compensation risks rejected by its members.* Section 79.25 provides that *when a rejected risk entitled to coverage is called to its attention* the bureau shall fix the initial premium therefor and, *upon its payment, designate a member to issue a policy for such risk.*

It is obvious that one of the more important functions of the bureau, as prescribed in the foregoing statutes, is to assure continuous compensation insurance coverage for all employes under the act. As stated in Yoselowitz v. Peoples Bakery, Inc. 201 Minn. 600, 607, 277 N. W. 221, 225:

"* * * All compensation insurers are members of the bureau and are required by the statute to file their consents authorizing the

bureau to act in their behalf in accordance with the provisions of the statute."

And at 201 Minn. 606, 277 N. W. 225:

"* * * The placement of rejected risks is the designation, pursuant to statute, * * * of member insurers as carriers of specified risks unable to obtain voluntary insurance. The objects sought to be achieved are the insurance of all compensation risks in solvent carriers *for the protection of employer, employe, and the public,* * * *." (Italics supplied.)

■ It has frequently been held that an administrative body may adopt rules and regulations binding upon persons subject to its power, if such rules are not arbitrary or contrary to statutory provisions relating to its creation and functions. State ex rel. Stone v. Probst, 165 Minn. 361, 206 N. W. 642. Section 79.26 specifically invests the bureau with such power, to the end that its functions may more readily be undertaken and performed. As stated in Roeder v. Kruger, 223 Minn. 79, 81, 25 N. W. (2d) 686, 687:

"The compensation rating bureau was created by statute for the purpose *of assuring, as far as possible, financial responsibility for compensation payments to injured employes in employment rejected by insurer as undesirable risks.* * * * To effectuate this purpose, the legislature, recognizing the difficulty attending such business, empowered the *bureau to make rules and regulations governing the issuance of such policies.*" (Italics supplied.)

It is clear that § 2, paragraph E, of the bureau's rules, requiring insurer to file with the bureau written notice of intention to cancel compensation policies, as above set forth, was adopted by the bureau in furtherance of the performance of its function of assuring continuous coverage for all risks under the act. A representative of the bureau testified that the purpose of this rule is to enable the bureau to forward to the industrial commission prompt information via telautograph with reference to policy cancellations so that the commission can immediately require new compensation insurance coverage from the employer concerned, thereby preventing any

lapse in the coverage of the employes involved. Had such notice been filed here, new coverage would have been immediately required, and the question now presented in all probability would never have arisen. The rule being effective, insurer's failure to comply therewith until November 4, 1948, extended the coverage of its policy to the employe beyond the date of his accident, September 21, 1948.

■ There is ample evidence to sustain the industrial commission's finding that the accident arose out of and in the course of the employment. Mr. Timar Persson, an employe of Minnesippi Decorators and the foreman on the job, under whom employe worked, testified that just prior to the accident he had instructed employe to help him remove certain pulleys at the suggestion of the foreman for the Twin City Concrete Pipe Company. It was while complying with these instructions that employe was injured.

It being clear from the foregoing that employe was obeying orders of his foreman at the time of his injuries, the case is governed by numerous decisions of this court holding that under such circumstances the injuries are covered by the employer's compensation policy. State ex rel. Albert Lea Packing Co. Inc. v. Industrial Comm. 155 Minn. 267, 193 N. W. 450; Kaletha v. Hall Merc. Co. 157 Minn. 290, 196 N. W. 261; Novack v. Montgomery Ward & Co. 158 Minn. 495, 198 N. W. 290; O'Rourke v. Percy Vittum Co. 166 Minn. 251, 207 N. W. 636; McKenzie v. Railway Express Agency, Inc. 205 Minn. 231, 285 N. W. 529. In this respect, the facts are distinguishable from those in Ridler v. Sears, Roebuck & Co. 224 Minn. 256, 28 N. W. (2d) 859, where the injured employe, without either express or implied instructions from his employer or his foreman, voluntarily left his employment to perform services for a third party and was injured while so doing.

■ The commission ordered insurer to repay employer from the proceeds of the award the sum of $54 advanced by the latter to employe shortly after the accident. Insurer contends that the commission should have directed that this amount be paid to employer's trustee in bankruptcy. The latter was not a party to these proceedings and made no claim to the amount. The advance was made

by employer from personal funds about the third week after September 21, 1948, the date of the accident. The subject is governed by the federal bankruptcy act. We cannot determine from the record here whether the trustee or the employer is entitled to this sum. Based on the record, we cannot say that the commission exceeded its powers in directing that the employer be repaid for its advances out of the award. If the trustee in bankruptcy is entitled thereto, he may enforce his rights by any one of several remedies available to him.

Order affirmed with an allowance to employe of $250 attorney's fees.

MR. JUSTICE THEODORE CHRISTIANSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

[1]Reported in 43 N. W. (2d) 272.