LEONE G. STAPLETON v. RIVERVIEW SPEEDWAYS, INC., AND OTHERS.
AETNA CASUALTY & SURETY COMPANY, RELATOR.

93 N. W. (2d) 193.

March 28, 1958—No. 37,282.

*Manthey, Carey, Manthey, O'Leary & Trenti,* for relator.
*Hultstrand, Abate & Wivoda,* for respondent Stapleton.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review a decision of the Industrial Commission awarding compensation and funeral expenses to the widow and three minor children of Orville L. Stapleton who was killed on October 10, 1954, at the Riverview Speedways, Inc., racetrack near International Falls, Minnesota, while he was attempting to flag down some cars participating in a stock-car race.

The claim petition was signed by Leone G. Stapleton, widow of decedent. Riverview Speedways, Inc., as employer, and relator, Aetna Casualty & Surety Company, filed separate answers.

The referee for the Industrial Commission found, among other things:

(1) That on the day of the accident Orville L. Stapleton was employed by the Riverview Speedways, Inc.;

(2) That on said date Riverview Speedways, Inc., was not an authorized self-insurer and was not insured by any insurance company;

(3) That said employee suffered a fatal personal injury which arose out of and in the course of his employment for and with Riverview Speedways, Inc.

The referee awarded compensation for employee's dependents against Riverview Speedways, Inc., together with funeral expenses.

Upon appeal to the Industrial Commission, it affirmed and adopted all of the findings and awards of the referee except the finding relating to insurance coverage. It decided that that finding was not in accord with the evidence and law of the case and found in lieu thereof:

"That on said date the Riverview Speedways Inc. was insured for liability under the Minnesota Workmen's Compensation Act by Aetna Casualty and Surety Company and that said insurer had due and statutory notice of said injury and death."

Compensation was therefore awarded against said insurer as well as against the employer. The commission's decision is now before this court for review at the instance of Aetna.

In August 1954 Riverview Speedways, Inc., was incorporated with Joseph A. Jones, C. N. Thompson, and John J. Corrin as officers. In preparation for stock-car races the corporation arranged for building a stadium or grandstand. Mr. Thompson, vice president of the corporation, testified that on August 17, 1954, he called Stan Naslund, agent for the First National Insurance Company at International Falls, and told him that the corporation was going to build and operate a racetrack and wanted workmen's compensation insurance. He claimed that Naslund said "you are covered as of now to operate and build this race track." He also testified that there was no further conversation with Naslund with reference to the insurance for the track prior to the date of the accident and that he was never sent a bill for this insurance. He further stated that he next tried to call Naslund on the night of October 10, 1954, following the accident, but was unable to reach him; he did contact him some time later, at which time he thought that Naslund told him the only insurance coverage was for "liability on the ground itself and also on the stands." That was the last time Thompson claimed to have talked with Naslund about this matter.

On the other hand, Naslund testified that on or about August 17, 1954, Thompson telephoned him and asked if he could write workmen's compensation insurance for the carpenters who were building the racetrack stands. Naslund claims that he told Thompson he would try and that he then made out an application to the Aetna for workmen's compensation coverage to be provided for carpenters engaged while building the stands, which application was sent to Dunning and Dunning, general agency for Aetna in Duluth. The witness further testified that on August 24, 1954, he received a letter from the Aetna Duluth agency stating that under no circumstances could they issue a workmen's compensation policy for the Riverview Speedways or any other racetrack. Mr. Naslund claims that upon receipt of the letter he called the Duluth Aetna agency, talked with Mr. Fisher, its secretary, and explained "that all they were interested in was covering workmen while building the stands." He said he then asked if they wouldn't reconsider and provide that insurance, to which they agreed.

He further testified that "On August 24 when I received a letter telling me that they could not issue a contract for workmen's compensa-

tion on an automobile race track is when I entered into a verbal binder with Mr. Fisher of Dunning and Dunning to cover the Riverview Speedway for workmen's compensation insurance." He said that this coverage was to be effective from August 17 until August 29, 1954. He testified as follows on direct examination:

"Q. That was to cover workmen's compensation insurance for Riverview Speedway of International Falls?

"A. Workmen's compensation insurance to cover carpenters while building grandstands for Riverview Speedway."

Naslund also testified that he informed Thompson of Riverview Speedways of this arrangement, which testimony is in conflict with Thompson's as the latter claimed he had no further conversation with Naslund with reference to the insurance after August 17, 1954, until after the accident on October 10.

Section II(A) of the Rules and Procedure of the Rating Committee of the Minnesota Compensation Rating Bureau (Basic Manual of Rules, Classifications and Rates issued by National Council on Compensation Insurance) provides:

"The Home Office of all members of the Bureau, wherever located, that write Workmen's Compensation Insurance on risks located in the State of Minnesota, shall file, or cause to be filed, either in single or duplicate copy as each may elect, their daily reports, endorsements, binders, and other documentary evidences of insurance, with the Bureau, not later than the date of issuance of policies, endorsements, binders, and other documents, with the understanding, however, that where only one copy is filed, it is to be retained as a permanent record by the Bureau."

It is the position of the commission in its opinion that the rules and bylaws as provided by L. 1921, c. 85, under which the Minnesota Compensation Rating Bureau was organized, are binding on all member companies writing workmen's compensation insurance in the State of Minnesota; that the rule providing for the filing of daily reports, endorsements, binders, and other documents quoted above is binding on each member. The opinion then goes on to say that there is no

evidence in the instant case that the "binder" in question covering the employer Riverview Speedways, Inc., was filed by Aetna in compliance with the above-stated rule and that this is in violation of the procedural manner of filing with the bureau.

The commission's opinion further states that the "binder," based on the testimony of Naslund, was effective as of August 17, 1954, and that, since it was in the nature of a policy of insurance and gave coverage for the liability imposed by the Workmen's Compensation Act, Aetna had to comply with the provisions of M. S. A. 176.185, subd. 1, in order to cancel that coverage. Section 176.185, subd. 1, provides in part:

"A policy of insurance covering the liability to pay compensation under this chapter written by any insurer licensed to insure such liability in this state may be canceled at any time upon written notice to the insured stating when, not less than 30 days thereafter, cancelation shall be effective. This notice of cancelation shall be served upon the insured by written statement to that effect mailed by registered return receipt mail to the insured at the address indicated in the policy and by mailing a copy thereof to the main office of the commission. Upon receipt of said copy the commission shall notify the insured that he must obtain coverage from some other licensed carrier and that, if unable to do so, he shall request the Compensation Rating Bureau to designate some carrier to issue a policy as provided in section 79.25."

The commission's opinion reaches the conclusion that the testimony in this case indicates that the "binder" was in effect from August 17, 1954, with no effective cancellation of the coverage provided by such "binder." It then states that, if there was no cancellation, the "binder" was still in force and effect on October 10, 1954, when Stapleton was killed.

A review of the commission's findings and opinion leaves us in a quandary as to the basis of its finding that the employer was insured on October 10, 1954, by Aetna under the Workmen's Compensation Act. If the commission believed that Naslund, for Aetna, told the employer that the insurance "binder" would terminate on August 29, 1954, then the policy would have lapsed on that date and § 176.185,

subd. 1, would not apply. In that event no cancellation notice was necessary inasmuch as that statute does not provide for a notice of cancellation when the policy terminates.

On the other hand, if the commission believed that Naslund did not tell Thompson that the "binder" would terminate on August 29, 1954, then there would have been a continuing oral contract of insurance and it would have been necessary to give a notice of cancellation as provided for by the statute.

If the commission proceeded on the theory that the oral "binder" of August 17, 1954, continued in effect because of the fact that it was not filed in compliance with the above-referred-to rules of the rating bureau, *irrespective of whether Naslund notified Thompson,* then that theory was wrong. Violation of the rating bureau rules by not filing the binder cannot make a contract between the parties nor can it change the terms of a contract. If Naslund notified Thompson that Aetna would not write the policy and that the coverage would terminate on August 29, 1954, then the oral "binder" of August 17, 1954, was no longer in effect after August 29. It is only in the event that the commission finds that Aetna never informed Thompson that it would not write the insurance that some act was necessary to cancel the original "binder" under § 176.185, subd. 1.

It is the general rule that the province of the supreme court is to determine questions of law and not to make findings of fact. Kennedy v. Thompson Lbr. Co. 223 Minn. 277, 26 N. W. (2d) 459; Lading v. City of Duluth, 153 Minn. 464, 190 N. W. 981; State ex rel. Lescault v. Industrial Comm. 155 Minn. 150, 193 N. W. 34.

It is our opinion under the record here that the case should be returned to the Industrial Commission for further findings in connection with the matters referred to herein.

In arriving at its decision the commission referred with apparent approval to T. H. Mastin & Co. v. Russell, 214 Miss. 700, 59 So. (2d) 321, involving the issuance of successive binders by an insurance company. We have examined that case and the Mississippi statute involved and do not consider it in point. The Mississippi statutes and rules concern not only cancellation but also termination. There is

nothing in § 176.185, subd. 1, that provides for a notice of termination at the end of a policy period as distinguished from cancellation during the life of a policy.

We are also cited to Hurley v. Chaffee, 231 Minn. 362, 43 N. W. (2d) 281. In that case an employer, as part of its financing plan, gave the holder of its note the power to accept any notice of cancellation from the insurance company and to negotiate with the insurance company for the cancellation of any policies. A workmen's compensation policy was issued to the employer and the premiums were paid by the noteholder. Before the policy was to expire by its terms, the noteholder, acting under its power of attorney from the employer, sent a notice to the insurance company to cancel the policy and return the unearned premium. Thereafter an accident occurred and certain claims for workmen's compensation were filed. The insurance company contended that the policy had been canceled. It was the opinion of this court that, until the insurance company filed with the compensation insurance bureau written notice of its cancellation as required by § 2, paragraph E, of the rules of the bureau, the policy remained in force and effect as to the employees covered thereby, and because the notice of cancellation was not filed until after the injury, the policy was in effect on that date. This court took the view that one of the important functions of the bureau is to assure continuous compensation insurance coverage for all employees under the act. However, a representative of the bureau had testified in that case that the purpose of the rule was to enable the bureau to forward to the Industrial Commission prompt information with reference to policy cancellations so that the commission could immediately require new compensation insurance coverage from the employer concerned, thereby preventing any lapse in the coverage of the employees involved. The court took the further position that as long as this rule was not arbitrary or contrary to statutory provisions relating to the bureau regarding its function the rule must be followed.

In the Hurley case of course it was logical to hold that the policy continued in effect where the bureau's rule had not been followed (failure to file notice of cancellation). The case at bar presents a different situation. Here, in accordance with what we have said above,

the bureau's rule is only material if the commission should find that the employer was informed that the expiration date of the "binder" would be August 29. The failure under these circumstances to comply with the bureau's ruling (failure to file the "binder") merely resulted in the bureau not knowing of the existence of the binder, while in the Hurley case the failure to comply with the bureau's rule resulted in the commission not knowing that an employer was without workmen's compensation insurance. In the instant case it would not be logical to hold that the lack of knowledge of the existence of the binder on the part of the bureau could keep that binder in effect beyond its own expiration date if the employer had been informed. Therefore the Hurley case has no bearing on the case at bar.

Remanded to the Industrial Commission for further findings with instructions to return such findings to this court in accordance with this opinion.

AFTER FURTHER FINDINGS BY COMMISSION.

On October 24, 1958, the following opinion was filed:

FRANK T. GALLAGHER, JUSTICE.

The above-entitled case was remanded to the Industrial Commission on March 28, 1958, for further findings with reference to whether or not the commission believed that Naslund, for the Aetna Casualty and Surety Company, told the employer that the insurance binder would terminate on August 29, 1954. The commission was then instructed to return such findings to this court in accordance with our opinion filed March 28, 1958.

In compliance with our request the commission forwarded to this court its decision dated June 18, 1958, in which it determined that the findings of fact and determination of George Hottinger, referee for the commission, dated April 9, 1956, and filed April 10, 1956, are in all things affirmed. Attached to said decision was the following memorandum:

"After reading the reasoning of the Supreme Court in its Mandate filed May 8, 1958, and after reviewing the matter the Commission finds that there was in force a binder issued to Riverview Speedways, Inc. by

Aetna Casualty and Surety Co. effective as of August 17, 1954 and terminating by its own terms on August 29, 1954, following which there was no coverage for workmen's compensation liability.

"Since there was no insurance provided after August 29, 1954, to cover the liability imposed by the Minnesota workmen's compensation law, the Commission is affirming the decision of the referee in awarding compensation benefits against Riverview Speedways, Inc., employer."

Subsequent to the June 18, 1958, decision of the commission the motion was made in this court on behalf of the respondent Leone G. Stapleton for an order again remanding the above cause to the Industrial Commission and directing the commission to specifically find either of the following: (1) That Naslund for Aetna told the employer that the insurance binder would terminate on August 29, 1954, or (2) that Naslund for Aetna did not tell the employer that the insurance binder would terminate on August 29, 1954; further to vacate its decision of June 18, 1958.

Thereafter on July 22, 1958, said motion was granted and the cause remanded to the Industrial Commission with instructions to return to this court its findings in connection with the aforementioned questions in order to permit this court to determine whether the decision of the commission, dated May 3, 1957, should be reversed or affirmed.

On August 4, 1958, the commission returned its finding that Naslund for Aetna told the employer that the insurance binder would terminate on August 29, 1954, and vacated its decision of June 18, 1958.

It is therefore our opinion that the decision of the Industrial Commission of May 3, 1957, which was the subject of our opinion of March 28, 1958, should be reversed.

Reversed.