Russell Boynton **IVES**, Respondent,

v.

**SUNFISH SIGN COMPANY, INC.**, Respondent,

U. S. Fidelity & Guaranty Insurance, Relator, and State Treasurer, Custodian of the Special Compensation Fund, Respondent.

No. 48542.

Supreme Court of Minnesota.

Jan. 12, 1979.

McEachron & McEachron, Bloomington, for relator.

Peterson, Lyons, Tews & Squires and Gerald Duffy, St. Paul, Sunfish Sign Company, Inc. and Russell B. Ives, President, Anoka, Warren Spannaus, Atty. Gen., Thomas G. Lockhart, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Heard before KELLY, SCOTT, and STONE, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

Certiorari was filed with this court by an insurer to review a decision of the Workers' Compensation Court of Appeals which affirmed the compensation judge's conclusion that the insurance coverage provided by a binder remained in effect past its stated termination date because it was not terminated in accordance with the notice provisions of Minn.St. 176.185, subd. 1. We affirm.

The facts are essentially undisputed. Respondent Russell B. Ives was injured in a one-vehicle accident on June 20, 1975, in Anoka, Minnesota. At the time of the accident he was in the course of his employment as president of Sunfish Sign Co., Inc. As a consequence of the accident he sustained severe personal injuries.

Mr. Ives has been in the sign-painting business since approximately January of

1974. In December of 1974 he and his wife, Mrs. Sara Ives, incorporated the business under the name Sunfish Sign Co., Inc.[1] In September of 1974, Mrs. Ives desired to purchase all of the required insurance coverages for the business, and solicited quotations from several insurance agents. She ultimately decided to purchase the insurance from Mr. Phaklides of Anoka Insurance Specialists.

At trial it was stipulated that Anoka Insurance Specialists, on behalf of United States Fidelity and Guaranty (relator) issued Sunfish Sign Co., Inc., a binder which provided for workers' compensation insurance as well as other types of insurance.[2] It was further stipulated that relator never issued the formal workers' compensation policy contemplated by the binder. Formal policies were issued for the other coverages referenced in the binder. Because the issue involved comes to us by stipulation, we have no explanation of why the workers' compensation coverage was not formalized.

Relator denies that coverage was in force on the date of the accident. It claims that, by its terms, the binder had expired well before the occurrence of this accident.[3] Respondent, State Treasurer, as Custodian of the Special Compensation Fund, claims that the workers' compensation insurance coverage provided by a binder cannot be terminated absent compliance with the notice requirements of Minn.St. 176.185, subd. 1. Thus, the parties agree that the sole issue before us is whether the provisions of Minn.St. 176.185, subd. 1, requiring written notice to the insured and the commissioner of the Department of Labor and Industry before a workers' compensation insurance policy is terminated are applicable to written *binders* of insurance.

Pursuant to Minn.St. 176.185, subd. 1, both the termination and cancellation of workers' compensation insurance are governed by the following procedures:

"* * * No *policy* shall be canceled by the insurer within the policy period *nor terminated upon expiration date* until a notice in writing shall be delivered or mailed to the insured and filed with the commissioner of the department of labor and industry, fixing the date on which it is proposed to cancel it, or declaring that the insurer does not intend to renew the policy upon the expiration date. Such cancellation or termination shall not become effective until 30 days after written notice has been filed with the commissioner of the department of labor and industry unless prior to the expiration of said 30 day period the employer obtains other insurance coverage or an order exempting him from carrying insurance as provided in section 176.181. Upon receipt of said notice the commissioner of the department of labor and industry shall notify the insured that he must obtain coverage from some other licensed carrier and that, if unable to do so, he shall request the Compensation Rating Bureau to designate some carrier to issue a policy as provided in section 79.25. Upon a cancellation or termination of a policy by the insurer the employer is entitled to have a policy assigned to him in accordance with sections 79.24 to 79.27. * * *." (Italics supplied.)

1. Sunfish Sign Co., Inc., is a small sign-painting concern owned entirely by Mr. and Mrs. Ives. As president, Mr. Ives was the primary salesman for the product, and did all of the hand-painting, lettering and designing of signs. The only other officer of the corporation is Mrs. Ives, who occupies the positions of secretary and treasurer.

2. The terms of the binder provided, in part: "It is expressly stipulated that this binder is issued subject to all the terms and conditions of the policy regularly issued by the Company in the state in which the operation or property is located, which policy is hereby made a part hereof to the same extent as if fully set forth herein; and to the payment of such premium as may be found to be due to this Company, which premium, in the event of loss before expiration of this binder, shall be fixed at the full annual premium for the sum insured." The coverage provided was for: (1) the building; (2) contents; (3) customers' goods; (4) loss of earnings; (5) general liability; (6) medical expenses; and (7) "Work Comp".

3. The binder was issued on September 12, 1974, and stated that it remained effective for 30 days.

Thus, the policy remains in full force and effect until cancelled or terminated in accordance with the statute. See, *Hurley v. Chaffee,* 231 Minn. 362, 366, 43 N.W.2d 281, 283 (1950).

Since the initiation of this proceeding, relator has maintained that the statute applies only to policies of insurance and not to binders. Relator relies on cases which have drawn an express distinction between binders and policies, and concludes that a binder is not encompassed within the term "policy." See, e. g., *De Cesare v. Metropolitan Life Ins. Co.,* 278 Mass. 401, 180 N.E. 154 (1932) (life insurance); *Frank v. Travelers Indem. Co.,* 310 So.2d 418 (Fla.App.1975) (automobile insurance). It should be noted that, even adopting relator's semantical approach to this issue, its conclusion does not necessarily follow. Courts have held that "binders" are "policies" of insurance. See, e. g., *Sherri v. National Sur. Co.,* 243 N.Y. 266, 153 N.E. 70 (1926) (binder defined as a "temporary policy"). As pointed out by respondent State Treasurer, as Custodian of the Special Compensation Fund, interpretation of the statute should focus on the legislative intent in making it a part of workers' compensation law.

▮ Statutes such as Minn.St. 176.185 play an integral part in the workers' compensation schemes of many states. See, 4 Larson, The Law of Workmen's Compensation, § 92.30, n. 33 (1978). The purpose of these statutes is to provide for continuous workers' compensation coverage to all eligible employees by affording the employer ample notice and time so that he can procure insurance when his existing policy terminates or is cancelled. *Kenney v. AAA Delivery Service,* 391 Mich. 454, 457, 216 N.W.2d 760, 762 (1974); *Nehring v. Bast,* 258 Minn. 193, 202, 103 N.W.2d 368, 375 (1960); *T. H. Mastin & Co. v. Russell,* 214 Miss. 700, 708, 59 So.2d 321, 323 (1952);

*Moore v. Adams Electric Co.,* 264 N.C. 667, 672, 142 S.E.2d 659, 664 (1965).

Although few courts have been presented with this precise issue,[4] those considering it have interpreted the statute consistently with the manifest legislative intent of providing for continuous coverage in the field of workers' compensation. Thus, in *T. H. Mastin & Co. v. Russell, supra,* the court interpreted the Mississippi statute as governing the cancellation of binders even though the statute on its face applied only to "contracts of insurance." 214 Miss. 708, 59 So.2d 324. Likewise, the court in *Adams Electric Co., supra,* held that in order to cancel a binder the insurer had to comply with the North Carolina notice statute which, like Minn.St. 176.185, subd. 1, on its face applied only to "policies." 264 N.C. 674, 142 So.2d 665.

Relying on the above two cases, and the strong legislative intent underlying the enactment of these termination statutes, the Workers' Compensation Court of Appeals concluded that binders could only be terminated in accordance with the statute. It reasoned as follows:

"Minn.St. 176.185 embodies the public policy of the State regarding cancellation and termination. It is clear that the public policy is that an employer will be given a specified time during which he will know that he has to seek insurance from private sources or secure insurance from the Minnesota Rating Bureau (Minn.St. 79.01 et seq.). It is readily seen that the State, on behalf of all its citizens, has an important and pertinent interest in all employers carrying workers' compensation insurance and to effect that interest, the State, under Minn.St. 176.185, has provided an elaborate monitoring service. To hold that a binder is some peculiar type of coverage and policy not subject to the statute, deprives the

4. In *Stapleton v. Riverview Speedways, Inc.,* 252 Minn. 548, 93 N.W.2d 193 (1958), the Industrial Commission held that a binder continued in effect despite its purported termination because it was in the nature of a policy of insurance and could thus only be cancelled in accordance with then Minn.St. 176.185, subd. 1.

We reversed, because Minn.St. 176.185 (as then written) applied only to cancellations and not to terminations of policies. Of course, the statute was amended in 1969 to include terminations and thus the *Stapleton* reasoning is not applicable to this case.

employer of an opportunity of sufficient time to be notified of the fact that no further coverage will be provided, and time for him to secure coverage. It further prevents the State from having sufficient knowledge to put into effect its monitoring and enforcement policies."

This reasoning is soundly based. The legislative intent manifested by the enactment of Minn.St. 176.185 mandates that the statute be read as pertaining to all contracts for workers' compensation insurance, whether evidenced by a formal contract or a binder.

We are not unmindful of the fact that it may be awkward to require a 30-day written notice of termination for binders of relatively short duration. The court in *T. H. Mastin & Co. v. Russell, supra,* recognized this possible administrative difficulty, but concluded that the purpose underlying the statute should not be defeated by this administrative consideration. See, 214 Miss. 708, 59 So.2d 324. Indeed, in the vast majority of cases a formal policy will be issued while the binder is in effect. In the few situations where the binder expires without the issuance of a policy, a 30-day notice period will allow the employer to obtain other insurance and thus avoid a lapse in coverage.

We conclude that the Workers' Compensation Court of Appeals was correct in its interpretation of Minn.St. 176.185, subd. 1, and therefore affirm. Since the only active respondent in this case is the State Treasurer, as Custodian of the Special Compensation Fund, no attorneys fees are allowed.

Affirmed.