MAGNOLIA PETROLEUM COMPANY, a corporation, Petitioner,

v.

STATE INDUSTRIAL COMMISSION of Oklahoma and Jane D. Rowan, Respondents.

No. 38663.

Supreme Court of Oklahoma.

March 21, 1961.

Rehearing Denied April 25, 1961.

S. M. Groom, Jr., Oklahoma City, Charles B. Wallace, R. T. Wilkinson, Jr., Frank C. Bolton, Jr., Ross Madole, Dallas, Tex., Robert W. Richards, Oklahoma City, of counsel, for petitioner.

Rex Holden, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

HALLEY, Justice.

This is an action by Magnolia Petroleum Company, respondent below and petitioner here, to review an award of the State Industrial Court in favor of Jane D. Rowan, entered February 9, 1959, awarding death benefits to Jane D. Rowan, as the survivor and only dependent heir of Robert W. Rowan, deceased. The original order was approved by the Court en banc on March 17, 1959, with two members dissenting. This Court is asked to review these orders under the procedure set out in Special Rules 48 through 53 of this Court, 12 O.S.A. c. 15 Appendix. The Magnolia Petroleum Company will be referred to as petitioner or Magnolia, and Jane D. Rowan, as claimant, and the State Industrial Commission as "Commission."

Robert W. Rowan, deceased, was an employee of Magnolia Petroleum Company as a relief pumper at its water flood unit near the town of Davenport, Oklahoma. On October 27, 1958, while so employed, Rowan relieved the regular pumper, Jeff Bowker on tank batteries Nos. 2 and 3 (Hopkins and Sukavaty Leases).

Rowan left his home in Davenport shortly before 8 a. m. At about 9 a. m. on the same day he was seen by his supervisor, who also saw him about 1:00 p. m. At 2:30 p. m. Rowan left the leases and drove toward Davenport, southwest of Batteries Nos. 2 and 3. Ben H. Kime, who pumped an adjoining lease noticed that Rowan drove by a barrel tank on Rowan's leases which was overflowing with salt water and clearly visible to Kime and must have been to Rowan, but Rowan did not stop but drove on toward Davenport.

Earlier on the same day Robert W. Rowan had lunch at home with his wife. As usual Rowan drove his own Model "A" Ford, for which he was paid mileage on the leases he pumped plus one trip to his home and return each day. He was also paid a bonus of one dollar for using his car. His home was about one mile from the leases he pumped. He owned his own car and he was wholly responsible for its upkeep. Mrs. Rowan testified that when she came back home after the accident, a pan with some

melon and a coffee cup were on the kitchen table.

Mary Eaton, a neighbor, testified that a little before 3 p. m. Rowan apparently went outside and attempted to make some minor repairs on his Model "A" Ford and tried to crank it, but had not put it in neutral gear. When it started it dragged Rowan through his yard and into a neighbor's yard, and continued into a ditch, breaking a leg and giving him other injuries which resulted in his death at 7:59 p. m. on the same day at Wesley Hospital in Oklahoma City.

On the morning of the day of Rowan's death he had talked to W. F. Harris, who pumped an adjoining lease, and Rowan had taken a spare off the front of his car in order to crank it when necessary. Rowan had impressed Harris that he knew of the defective condition of his car and that it would not start without cranking and Rowan had stated his intention to have the car checked over. When the car was first seen after the accident, the hood was off. Kime, previously mentioned herein, testified that it was the job of a pumper to attend to salt water leaks immediately.

In the answer of Magnolia it was admitted that Robert W. Rowan was employed by it as a pumper on the date of his death, and that he was involved in a fatal accident on the date mentioned, but specifically denied that the accidental personal injury resulting in his death arose out of and in the course of the employment of decedent, and also alleged that decedent was at home on a purely personal mission when the accident occurred. On January 7, 1959, Magnolia filed an amended answer alleging that decedent had returned home during working hours from the leased premises and was wholly engaged in his own personal affairs at the time of the accident.

The matter was heard January 26, 1959. The trial court entered an order awarding full death benefits of $13,500, and Magnolia appealed to the Commission en banc, and later moved for specific findings of fact and conclusions of law as to four points, to wit:

(1) Time and place of accident; (2) The risk reasonably incident to employment of deceased giving rise to the accident; (3) The work deceased was employed to perform at the time of his injuries; (4) The work he was performing when he sustained the injury.

After oral argument and on March 17, 1959, the Commission affirmed the order of the trial judge and Magnolia perfected its appeal to this Court.

The Magnolia first presents the following proposition, followed by three subpropositions A, B and C, which will be considered in the order presented in its brief. The principal proposition, No. 1, is as follows:

"The fatal injuries sustained by Rowan which were the basis of the award by the Commission did not arise out of and in the course of his employment."

Section 11, 85 O.S.1951, provides in part that:

"Every employer * * * shall pay * * * compensation * * * for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment, * * *."

Petitioner points out that the question of whether an injury arises out of and in the course of employment is one of fact to be determined by the Industrial Commission, but if there is no dispute as to the facts, it is a question of law. It cites Farmer's Gin Co. v. Cooper et al., 147 Okl. 29, 294 P. 108, 110, wherein the facts are somewhat similar to those here involved. An employee of a cotton gin company, while in the scope of his employment, was injured by a cotton burr blowing into his eye. After medical treatment the eye continued to give trouble and it was suggested that he go to a specialist for further treatment. He asked for permission to leave work and drive to Mangum for that purpose. On his

way home he was injured in an automobile accident. The Commission made an award, which was vacated by this Court for the reason that the injury was "not the result of exposure occasioned by the nature of his employment."

The Court said in part that:

" 'In the course of' the employment means the accident comes while the workman is doing the duty which he is employed to perform. 'Out of' the employment as used in the law means that there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. 'Under this test', says the McNicol text, 'if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' "

In 99 C.J.S. Workmen's Compensation § 231, it is said:

" * * * It has been laid down as a general rule that for harm befalling a workman to be compensable, such harm must have befallen the employee while he was in the territorial area within which he was required to be by his work, or on the premises of the employer or at a place so connected therewith as to be regarded as part of such premises, and that, generally speaking, recovery has been allowed in off-the-premises cases only where there has been some particular risk which the employer could be said to have caused or allowed to exist * * * Harm befalling an employee while off the employer's premises, to be compensable as in the course of employment, must have in fact occurred while the employee was actually engaged in the furtherance of the business or affairs of the employer and constructive engagement of such furtherance is insufficient. * * * "

There is no question but that the fatal accident that caused the death of Rowan occurred while he was off the premises of his employer.

Petitioner's sub-proposition "A" sets out that decedent breached a specific duty of his employment when he left the lease where and when salt water was overflowing and thereby clearly deviated from the scope of his employment.

On the day of the accident he was employed to pump two leases about a mile from his home in Davenport. His hours were from 8 a. m. to 4 p. m. On October 27, 1958, as above stated, Rowan was seen leaving his employer's premises at 2:30 p. m. by Ben Kime, a pumper on an adjoining lease who saw Rowan drive by a salt water barrel that was overflowing in plain view of both pumpers. Their definite instructions were to take care of such matters to avoid damages to land. Rowan apparently paid no attention to the overflowing salt water barrel. Slightly before 3:30 p. m. a neighbor of the Rowans heard the roar of Rowan's Ford and later learned that the accident occurred at that time. The Ford of Rowan had gone out of control and dragged him some distance causing his fatal injuries. Roy Murray testi-

fied that he was at a nearby fishing pond at 3:00 p. m. waiting for Rowan to meet him there as they had agreed earlier in the day.

The above facts are not disputed by any testimony and there is positively no evidence to prove that Rowan was engaged in his employment for petitioner when the accident occurred. The burden of proving that the injury was accidental and arose out of and in the course of his employment must be met by claimant. This is a clear and positive rule.

An errand wholly personal and not related to employment of an employee, is not a part of the employment relationship, and an injury occurring during such period is not compensable. In Novak v. McAlister, Okl., 301 P.2d 234, 235, an employee had gone to a cafe during her lunch hour. She was injured while returning from lunch when she slipped and fell in front of the building in which she was employed. The Court said in its opinion as follows:

"An injury does not arise out of the employment within the meaning of the Workmen's Compensation Law of this state, unless it results from a risk reasonably incident to the employment, and unless there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury."

Under the rule above announced it cannot be said with reason that Rowan's working on his Ford had any causal connection with his employment as a pumper. It was his personal duty to keep his car in a usable condition while he was being paid to use it in his work. His work day as a pumper ended at 4 p. m. but he left the premises at 2:30 p. m., despite the overflowing salt water barrel which fell within his express duties. It is not denied that he had agreed at noon to meet a friend at a fishing pond that afternoon and was repairing his Ford when the accident occurred a little before 3 p. m.

As sub-proposition "B", petitioner submits that decedent's activities in repairing his own car off the premises where he was supposed to be, placed him in a more dangerous position than that usually occupied, were not connected with or incident to his employment. He was paid by his employer for the use of his Ford in performing his duties on the lease, as well as in going from his home to and from the lease. Our attention is called to Owens v. McCallum & Forber, 186 Okl. 305, 97 P.2d 754, 755, wherein it was held that the question of whether an injury arises out of and in the course of employment is one of fact to be determined by the Industrial Commission, but that if there is no dispute as to the facts it is a question of law as to whether the injury arose out of and in the course of employment. Farmer's Gin Co. v. Cooper, supra. In Owens v. McCallum & Forber, supra, it was said:

"* * * Nowhere was it shown that his duties required him to make any repairs on the car in question nor does it appear that the same were in anywise connected with or incident to his employment. * * *"

The Magnolia had no control over the car of Rowan or its condition which may or may not have required repairs. There is no evidence that such repairs as Rowan was making at home could not have been made on its premises as well as at the home of Rowan, during the time he was supposed to have been on the leases.

This Court has applied the test, where an employee was injured off the premises of the employer while engaged in some activity incidentally related to his employment, as, "For whose convenience is the errand being performed and generally who will it benefit?", as expressed in Trans-Tex Drilling Co. v. Pittser, Okl., 298 P. 2d 446, and here we are bound to conclude that the activity of the decedent in repairing his car off the premises was for his own benefit and would result in his own benefit or pleasure on a planned fishing trip.

Under sub-proposition "C" petitioner contends that even if decedent had been authorized to take a "coffee break" during the time the accident occurred, an award is not proper under the facts before us here. There is no evidence that Rowan had ever been allowed to go home for a coffee break, but there is evidence that coffee breaks were tolerated, but employees were never granted such time off if it would result in a deviation from their fixed duties.

We find no merit in the contention of claimant that in recent years it has become well established that oil field workers may take time off either on or off the premises of their employer during working hours for coffee breaks. None of the evidence before us shows that such time off has been orally or by any written order authorized by employers. There is some evidence that it has been tolerated, but not authorized or approved. The supervisor of Rowan had reprimanded him on three occasions for leaving the premises, where he was employed during working hours.

City Bus Co. v. Lockhart, 204 Okl. 314, 229 P.2d 586, 587, is a leading case upon this subject. There a bus driver was operating a bus in Oklahoma City. He left his bus on the street and had gone across the street to get some water and a cup of coffee and in returning had received an injury. In the opinion the Court said in part:

"* * * The testimony is undisputed that it is the custom for drivers to stop and obtain food, drink or refreshments when they can at the most opportune time, and the claimant testified that drivers were not supposed to take over five minutes to obtain a cup of coffee or a drink of water.

* * * * * *

"That claimant while engaged as aforesaid was acting in conformity with a practice of long standing and did not thereby voluntarily place himself and was not shown to be in a position more dangerous than that usually occupied while driving his vehicle; * * *"

The necessity of obtaining water and food are recognized, but the bus driver did not drive his bus off the regular route when he stopped across the street from where he could get refreshments. The facts are quite different when Rowan left the premises of his employer and drove a mile away to his home. There is evidence that the Magnolia furnished ice and water can for its employees, but Rowan evidently did not take advantage of this offer. He had left his leases during working hours and had been reprimanded for such conduct, and his leaving the leases he pumped during working hours is not shown to have been with the consent and approval of Magnolia, but contrary to its desires and orders.

In Callaghan v. Brown, 218 Minn. 440, 16 N.W.2d 317, the employee Callaghan was a fireman in an office building and had formed the habit of going across the street to a lunch counter to buy coffee and carry it back to his place of work. During such a trip Callaghan was killed. The court denied compensation. Under the City Bus Co. and the Callaghan cases it was held that accidents occurring during breaks, even those authorized by the employer are not necessarily compensable.

We find no merit in the argument of respondent that the home of herself and decedent was a kind of sub-warehouse where tools and supplies were stored for the Magnolia. She did testify that such company tools and oil cans were in her husband's car the day of the accident.

It is our conclusion that there was no causal connection between Rowan's activities and his pumping the lease, or necessarily connected with the so-called coffee breaks. Rowan did deviate from his employment and was in a more dangerous position than when he was on his job. There is no evidence to support the theory of a "physical necessity" prompting his trip

away from his job just prior to his fatal injury.

Since we conclude that the award of compensation by the Industrial Commission is not supported by reasonable evidence, and should be vacated, we find no reason to discuss proposition No. 2, which complains of the failure of the Commission to make specific findings of fact.

The award of the Industrial Commission (now Court) is hereby denied and vacated.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and JACKSON and IRWIN, JJ., concur.

WELCH, JOHNSON and BERRY, JJ., dissent.