W. E. McKENZIE v. RAILWAY EXPRESS AGENCY, INC.[1]

April 28, 1939.

No. 32,001.

[1]Reported in 285 N. W. 529.

. *R. H. Fryberger,* for relator.

*Mark F. Crotty* and *C. E. Warner,* for respondent.

PETERSON, JUSTICE.

The employe, McKenzie, was an express messenger. On November 29, 1936, he reported at the Milwaukee depot in Minneapolis for duty at about 9:30 p. m. to work in a baggage car to be attached to train No. 16 scheduled to leave at 10:15 p. m. on a run from Minneapolis to Chicago. He received and receipted for a small safe and same valuables which were placed on a platform truck. The truck was hauled down to the baggage car and placed opposite the door. The baggage car, which was several hundred feet from the depot building, was cold and not attached to any train at the time. It was to be picked up by train No. 16 when it pulled in. About 15 feet away on the track across the station platform, train No. 4 was waiting and about to start on a run to Chicago. It had a baggage car attached which was both heated and lighted. It was so cold that it was uncomfortable for the employe to be outside. He entered the baggage car attached to train No. 4 seeking shelter and protection from the cold during the short time that he had to wait. While there, one Ries, a baggageman employed by the railroad company, entered the car. He worked in the baggage car on train No. 16 which was next to the car in which McKenzie worked. Like McKenzie, he was waiting for the train to pull in and start on its run, and his reason for going into the baggage car on train No. 4 was also to seek shelter and protection from the cold. Ries had laryngitis, in consequence of which he spoke in a low, husky voice. He approached McKenzie, attempted to speak to him, and tapped him on the shoulder. McKenzie attempted to get away from Ries and while doing so fell, either as a result of a push by Ries or by tripping in attempting to avoid him. As a result of the fall he sustained injuries for which he was awarded compensation. The em-

ployer contends that the injury did not arise out of and in the course of the employment for the reasons that (1) the employe had departed from his line of duty for his personal convenience and desires, which were not incident to the employment; (2) the injury occurred upon premises not under the control of the employer; and (3) the injury was not attributable to the employment.

▉ The workmen's compensation act covers workmen while engaged in, on, or about the premises where their services are being performed, or where their service requires their presence as part of such service as such workmen. 1 Mason Minn. St. 1927, § 4326 (j). Acts of the employe necessary for his comfort and convenience, though strictly personal to himself, are incidental to the service, and injuries sustained while performing them are compensable. Kaletha v. Hall Merc. Co. 157 Minn. 290, 196 N. W. 261. Seeking shelter from the cold is within the rule. Gillmore v. Ring Const. Co. 227 Mo. App. 1217, 61 S. W. (2d) 764. The employe was required to wait until the baggage car was placed on the track before his actual work commenced. The place of his employment included the premises in the immediate vicinity of his work. Krause v. Swartwood, 174 Minn. 147, 218 N. W. 555, 57 A. L. R. 611. The near-by baggage car was such a place. It makes no difference in such a situation that the premises where the accident occurred were not under the employer's control at the time of the accident. Ludwig v. Farmers Shipping Assn. 181 Minn. 90, 231 N. W. 803.

▉ The employe not only did not participate in, but tried to avoid, the horseplay of the other employe, Ries. That they were not employed by the same employer is not controlling. The employer is liable to the employe for compensation if the employment exposed him in special degree to the risk of the injury. 6 Dunnell, Minn. Dig. (2 ed.) § 10403, note 99; Mahowald v. Thompson-Starrett Co. 134 Minn. 113, 158 N. W. 913, 159 N. W. 565; Novack v. Montgomery Ward & Co. 158 Minn. 495, 198 N. W. 290.

In State ex rel. Great Northern Exp. Co. v. District Court, 142 Minn. 410, 172 N. W. 310, we sustained an award of compensation for the death of an employe of a railway express company, killed

by the act of an employe of a railroad company, although the deceased and the employe whose act caused the death were employed by different employers, upon the theory that the former's employment exposed him to risk of injury by act of the latter. The evidence justifies a finding here that the employment exposed the employe in special degree to the risk of injury from the acts of Ries. Their work brought them in contact with each other the same as if they were employed by a common employer. So far as the employe was concerned, he was exposed to the same employment risks and hazards regardless of who was the employer. The employe's association with the other workmen involved exposure to risk of injury from such acts as workmen might reasonably be expected to do about their work. Workmen commonly indulge in jokes, pranks, and horseplay as incidents of their employment. Where an employe sustains injury through jokes, pranks, or horseplay instigated by others and in which he had no part, he is entitled to compensation for such injury as having arisen out of and in the course of the employment. Barden v. Archer Daniels Midland Co. 187 Minn. 600, 246 N. W. 254; In re Leonbruno v. Champlain Silk Mills, 229 N. Y. 470, 128 N. E. 711, 13 A. L. R. 522; Gillmore v. Ring Const. Co. *supra;* notes, 13 A. L. R. 543, and 43 A. L. R. 495. In Leonbruno's case, *supra,* which we cited and followed in Barden v. Archer Daniels Midland Co. *supra,* the compensability of such injuries was fully considered and notice taken of the diversity of opinion with respect to the question in an opinion by Mr. Justice Cardozo, who in pointing out that the weight of authority and reason supports the view which we have adopted said [229 N. Y. 472]:

"Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his service. * * * The risks of such associations and conditions were risks of the employment."

The decision of the industrial commission is affirmed and the writ quashed. Respondent is allowed $100 attorneys' fees in this court.

Affirmed and writ quashed.

MR. JUSTICE HILTON, incapacitated by illness, took no part.