## ALICE CALLAGHAN v. JOHN NICHOLS BROWN AND ANOTHER.[1]

November 10, 1944.

No. 33,841.

*R. Vern Eckman,* for relator.
*Holmes, Mayall, Reavill & Neimeyer,* for respondents.

LORING, CHIEF JUSTICE.

The relator petitioned the industrial commission for compensation under the workmen's compensation act for the death of her

[1]Reported in 16 N. W. (2d) 317.

husband. The referee and the commission found for the employer and its insurer. A writ of *certiorari* issued from this court to review the decision.

Relator's husband worked as a fireman in the Lonsdale Building at Duluth. His principal duty was to fire the boiler. None of his duties took him outside the building, but because of the nature of his work he often had some free time. It had become his habit, acquiesced in by his employer, to leave the premises and go to a lunch counter across the street to buy coffee and return to the premises to drink it. He had been doing this once or twice a day for some 30 years. On the morning of April 15, 1942, Callaghan reported for work about 6:00 a. m. and was seen leaving the building between 7:30 and 8:00 a. m., presumably to get coffee. His body was found about 8:00 a. m., lying in the street. Apparently he had been hit by an automobile while crossing the street. He died in August 1942 as a result of the accident.

The finding of the commission was that "on April 15, 1942, said employe sustained accidental injuries, but the occasion of said accident did not arise out of or in the course of his said employment." Does the evidence support that finding? We think it does. The accident to deceased occurred within the period of his employment, but he was not at the time in the performance of any duty owing to his employer. He was not at a place where his duties required him to be. His death cannot in any way be traced to the nature of his employment nor to a risk to which his employer's business exposed him. He was where he was solely in furtherance of his own personal desires and accommodation. There was no causal connection between his employment and the exposure to the risks which caused his death. He did not fall within any of the special exceptions which extend the coverage of the compensation law. He was not a traveler in the course of his employment, nor did he have any mission of the employer to fulfill in connection with his personal errand. The performance of his duties to his employer did not require him to go upon the street.

While our attention has not been called to any Minnesota case which is an exact parallel to the situation here involved, the case before us is controlled by principles laid down by this court in cases of which Maxa v. County of Le Sueur, 168 Minn. 65, 209 N. W. 898, is an illustration. In that case, the injured employe was preparing his lunch on the premises of the employer under an arrangement between himself and the foreman for the personal convenience of the foreman and the employe. The findings of the industrial commission that the employe was not then exposed to a hazard arising out of or in the course of his employment were sustained by this court. See, also, Jotich v. Village of Chisholm, 169 Minn. 428, 211 N. W. 579.

In Corcoran v. Teamsters & Chauffeurs Joint Council, 209 Minn. 289, 292, 297 N. W. 4, 6, this court adhered to the rule previously announced in Novack v. Montgomery Ward & Co. 158 Minn. 495, 498, 198 N. W. 290, 292, and prior cases, that an injury "may be received 'in the course of the employment' and still have no causal connection with it," and in order to arise out of the employment it must reasonably appear, "from all the facts and circumstances, that there is a causal connection between the conditions which the employer puts about the employe and the resulting injury." See, also, Cavilla v. Northern States Power Co. 213 Minn. 331, 6 N. W. (2d) 812.

Relator contends that, because the deceased's hours of employment were long, his excursion in quest of refreshment was in furtherance of his employment. We cannot follow relator's reasoning in this respect. The deceased came to work at 6:00 a. m. after having had his breakfast at home, and he was found after the accident upon the street at about 8:00 a. m. No doubt he was following a custom of indulging in mid-morning coffee, but it could hardly be said that at that time his quest for refreshment was in furtherance of his employment any more than his need of rest after the day's work would keep him within his employment while going home for supper and repose. Even were he going out for lunch at the usual hour, he would not be within the terms of the act unless he

was combining his lunch period with some errand for the master.

Relator relies heavily upon Bollard v. Engel, 254 App. Div. 162, 4 N. Y. S. (2d) 363, but there the industrial board found as a fact that the employe was in the course of his employment and was exposed to a hazard arising out of it in his search for a "quick supper." Apparently that case has not been followed by the New York court of appeals. See, Lovett v. Buck, 285 N. Y. 526, 32 N. E. (2d) 824. Other cases of interest in this connection are Industrial Comm. v. Ahern, 119 Ohio St. 41, 162 N. E. 272, 59 A. L. R. 367; Tipple v. High Street Hotel Co. 70 Ohio App. 397, 41 N. E. (2d) 879; Selby v. Industrial Comm. (Ohio App.) 36 Ohio L. Abs. 74, 42 N. E. (2d) 669; Dreyfus & Co. Inc. v. Meade, 142 Va. 567, 129 S. E. 336.

The decision of the industrial commission is affirmed, and the writ of *certiorari* is discharged.