JAMES I. RHEA v. RALPH R. OVERHOLT AND OTHERS.[1]

November 29, 1946.

No. 34,251.

[1]Reported in 25 N. W. (2d) 656.

*Byron W. McCullagh,* for relator.
*Reynolds & McLeod,* for respondents.

JULIUS J. OLSON, JUSTICE.

Certiorari brings for review an order of the industrial commission denying relator's claim for compensation.

Relator was engaged as a salesman and claim adjuster for respondent employers, who are engaged in the business of writing hail insurance. His working territory was, as he testified, "Where-

ever they send me in the state of Minnesota." His claim was heard by a referee of the commission, who found (par. III): "That on said date [of accident] the employe sustained an accidental injury to his person which arose out of and in the course of his employment." Respondents appealed to the commission, challenging this finding as "not in conformity" with the compensation law and as being "unwarranted by the evidence." The commission unanimously "vacated and set aside" this finding, and in its place found and determined as follows:

"That on said date the employe sustained an accidental injury to his person, but that said accident and resulting injury did not arise out of and in the course of his employment.

"Now, THEREFORE, IT IS CONSIDERED AND DETERMINED That the employe herein is not entitled to compensation under the workmen's compensation act and his petition is in all things disallowed."

In the performance of his work, relator was provided with an automobile furnished by his employers. On the day of the accident he drove from his home in St. Paul to Minneapolis and parked the car near his employers' place of business, which is on the eleventh floor of the Metropolitan Life Building. The parking lot, a public one, was chosen and used by relator upon his own initiative, his employers having had nothing to do with the matter of selection. He worked in his employers' office that day and there received instructions about the territory to be covered by him during the following days. After he had received these instructions, he remained at the office until nearly four o'clock in the afternoon, the usual quitting time, then left for the parking lot, unlocked his car, and placed in it his portfolio containing the instructions and other papers pertaining to his work in the designated territory. He then locked the car and started for the Rothschild store, where he had previously purchased five shirts, but which he could not take with him at the time of purchase because certain alterations had to be made in the sleeves. The Rothschild store is some three blocks distant from the parking lot. On his way back, relator stopped for a brief moment in the lobby of the office building where his em-

ployers' office is located, intending to telephone his home. All telephones being engaged, he at once headed for the parking lot. He testified that he had intended to get a map of one of the counties where his work was to be performed during the following days, but, since it was late in the afternoon, he did not go up to his employers' office. On his way to the parking lot he stopped at a saloon or tavern to answer a "call of nature." On his way out of the building and while still in the tavern, he fell and was injured at the rear entrance, where there are "a couple of little steps" leading down to a public alley adjacent to the tavern on the one side and the parking lot on the other. Upon the recited facts as found by the triers thereof, we must find the basis for decision.

The only question presented below and here is "whether the accident arose out of and in the course of the employment."

Relator assigns two errors: (1) That the commission erred in finding "that said accident and resulting injury did not arise out of and in the course of his [relator's] employment"; and (2) that the "facts clearly establish that the employe sustained an accidental injury to his person which arose out of and in the course of his employment." We shall consider and dispose of both of these together, since, as we have said, there is but one fact issue.

For our guidance we have the provisions of Minn. St. 1945, § 176.01, subd. 11,[2] which read:

"Without otherwise affecting either the meaning or interpretation of the abridged clause 'personal injuries arising out of and in the course of employment,' it is hereby declared:

"*Not to cover workmen except* while engaged in, on, or about the premises where their services are being performed, or *where their services require their presence as a part of such service, at the time of the injury,* and during the hours of service as such workmen; *provided, that where the employer regularly furnishes transportation to his employees to or from the place of employment, such employees shall be held to be subject to this chapter while being so transported,* \* \* \*." (Italics supplied.)

---

[2]See, M. S. A. § 176.01, subd. 11, and cf. Mason St. 1927, § 4326(j).

In his brief relator places much emphasis upon the claim that his "personal errand was incidental to the employment and did not interrupt the employment"; and, further, "assuming the personal errand did interrupt the employment, [that] the employe had returned to the employment prior to the accident."

For respondents, the contention is that when relator left the parking lot, after placing his brief case in the car and locking it, and went to the Rothschild store to get the shirts he had purchased, there was a deviation from his employment, and that this was continuous until the time when he should return to the parking lot where he had left his car.

We have repeatedly said that the industrial commission has the burden of determining the facts and that we do not reverse unless it clearly appears from the record that reasonable minds functioning judicially could arrive at only one conclusion.

Relator's theory is that because he was a traveling insurance salesman the trip which he took from the parking lot to the store was incidental to his employment, and for that reason he was within the compensation act. That theory has been advanced in several of our cases. Thus, in Lunde v. Congoleum-Nairn, Inc. 211 Minn. 487, 488, 489, 1 N. W. (2d) 606, 607, we said:

"Such argument assumes that it is impossible for a traveling man, even though he be otherwise and mostly engaged on his employer's business, to so depart therefrom on an enterprise of his own as to put him for the time being beyond coverage of the law. Obviously he may do so." The reason for so holding is that the argument "ignores *the real determinant, which is the employe's activity of the moment.*" (Italics supplied.)

Likewise, in Cavilla v. Northern States Power Co. 213 Minn. 331, 6 N. W. (2d) 812, where we definitely held that travel by an employe in a digression from the prosecution of the employer's business is not covered by the compensation act. This holding was reiterated and sustained in Callaghan v. Brown, 218 Minn. 440, 441, 16 N. W. (2d) 317, where we said:

"* * * It had become his [the workman's] habit, acquiesced in by his employer, to leave the premises and go to a lunch counter across the street to buy coffee and return to the premises to drink it. He had been doing this once or twice a day for some 30 years."

In that case, as in this, the question was whether the accident causing the workman's death arose out of and in the course of his employment. He had been hit by an automobile while crossing the street "presumably to get coffee." The commission held against the widow, who sought compensation. We affirmed upon the theory that (218 Minn. 441, 16 N. W. [2d] 318):

"* * * The accident to deceased occurred within the period of his employment, *but he was not at the time in the performance of any duty owing to his employer.* He was not at a place where his duties required him to be. *His death cannot in any way be traced to the nature of his employment nor to a risk to which his employer's business exposed him.*" (Italics supplied.)

Also, in that case, we had occasion to review some of our prior decisions bearing upon this issue. There our prior cases were referred to and discussed (218 Minn. 442, 16 N. W. [2d] 318) and our conclusion was—

"that an injury 'may be received "in the course of the employment" and still have no causal connection with it,' and *in order to arise out of the employment it must reasonably appear,* 'from all the facts and circumstances, *that there is a causal connection between the conditions which the employer puts about the employe and the resulting injury.'* " (Italics supplied.) And further: "Even were he going out for lunch at the usual hour, he would not be within the terms of the act unless he was combining his lunch period with some errand for the master."

In Engsell v. Northern Motor Co. 174 Minn. 362, 219 N. W. 293, where Samuel J. Engsell, relator's husband, who worked for his employer as an automobile salesman on a commission basis, was killed in an auto accident, the commission had found (174 Minn. 363, 219 N. W. 294)—

"that at the time of the accident he was driving an automobile owned by himself and used as an instrument of his employment, as well as for private purposes; that the automobile was being used and driven by him at the time for a private purpose and not in connection with his employment; and that the accident causing his death did not arise out of nor in the course of his employment."

We there held (174 Minn. 364, 219 N. W. 294):

"The rules governing this court in reviewing findings of the industrial commission are well settled. The findings must stand if there is evidence reasonably tending to sustain them or, as stated in some of the decisions, unless they are clearly and manifestly contrary to the evidence. And if, upon a fair consideration of all the evidence and the fair and reasonable inferences which may be drawn therefrom, reasonable minds might reach different conclusions, a reasonable conclusion so arrived at must be sustained."

Our conclusion was (174 Minn. 365, 219 N. W. 295):

"* * * Mr. Carlson [the prospect] had owned a Hupmobile. He had examined and tried out this car and was satisfied and ready to close the deal. His only purpose in going down town was to buy this food for Mrs. Carlson. The commission might reasonably conclude that decedent took this trip as a simple accommodation for Mr. Carlson, a mere private purpose, and not as a part of nor in the course of his employment. The fact that the commission would have been justified in a contrary conclusion does not avail. We cannot make findings of fact for the commission where an issue of fact is presented. The burden of proof rested on the petitioner, and we cannot say that the evidence here is conclusive either way."

We find nothing in this record justifying relator's claim that he "had returned to the employment prior to the accident." That is a mere argument that might be used before the triers of fact. What we have said covers the issues presented.

Writ discharged and order affirmed.