# DORA KAPLAN v. ALPHA EPSILON PHI SORORITY AND ANOTHER.[1]

April 6, 1950.

No. 35,092.

---

[1]Reported in 42 N. W. (2d) 342.

*John A. Goldie,* for relator.
*C. A. Stark,* for respondents.

MATSON, JUSTICE.

Certiorari to review an order of the industrial commission denying compensation on the ground that relator's injury did not arise out of and in the course of her employment.

Relator, Dora Kaplan, was employed as house mother for the respondent Alpha Epsilon Phi Sorority. She lived in the sorority house, which is located near the University of Minnesota campus in Minneapolis. Girls who come from homes outside the city live and regularly take their meals in the sorority house. Other members from the Twin Cities area eat occasional meals at the house. Relator, who was subject to call 24 hours a day, performed duties akin to those of a mother in looking after her home and family. She ordered the food, supervised the preparation of meals and household cleaning, acted as a chaperon, hostess, confidante and adviser for the girls, and was responsible for the observance of reasonable hours.

Relator sustained her injury on the evening of October 31, 1947, after she had left the sorority house, which is located on Tenth avenue southeast and Fifth street. She walked on the west side of Tenth avenue until she reached Fourth street, where she proceeded to cross to the east side of Tenth avenue. As she was about to step up on the opposite Tenth avenue curb, which had been greased by Halloween pranksters, she slipped, fell, and broke her hip. Relator testified that at the time she was on her way to Grays Drug Store located about four blocks to the east at the corner of Fourteenth avenue southeast and Fourth street to purchase bandages to replenish the supply which she maintained as part of the sorority house first-aid kit, and that she intended, after making such purchase, to take a streetcar to attend religious services at Temple Israel, where she had been a communicant for 20 years.

■ Although the evidence will reasonably sustain a finding that relator's intended trip to Temple Israel was a personal mission and not a mission undertaken as part of her duties as spiritual supervisor for the girls or for the benefit of the sorority generally in cultivating favorable public relations with the parents of present and future sorority members, the decision of the industrial commission must be reversed and the matter remanded for a rehearing, in that the findings, taken as a whole, were made under an erroneous application of the law. Where an award or denial of compensation has been made through a misapprehension or misapplication of a controlling principle of law, the case may be remanded to the commission for rehearing. Hogan v. Twin City Amusement Trust Estate, 155 Minn. 199, 193 N. W. 122; Klika v. Independent School Dist. 161 Minn. 461, 202 N. W. 30; 6 Dunnell, Dig. & Supp. § 10426.

The commission's majority opinion, in reversal of the referee's findings, after determining that relator's dominant purpose in leaving the sorority house was to go on a personal mission to Temple Israel, held that the accident did not arise out of and in the course of her employment, although at the time of her injury she may have been on her way to the drugstore to buy bandages for her employer. Apparently, the commission assumed that, if the trip to the. drugstore was but an incidental part of her personal activities that evening, it necessarily followed that any injury sustained on that trip did not arise out of her employment. The application of the dominant-motive or dominant-purpose rule does not call for a construction which arbitrarily holds the entire journey of an employe to be wholly "fish or fowl" without regard to whether a deviation or detour is involved. An errand or movement of an employe, the purpose of which is dominantly personal, *may* involve a deviation or detour which is made *necessary* by the employer's business; and if an injury occurs during such deviation or detour it arises out of and in the course of the employment. In a number of cases we have so held.[2] Confusion has apparently resulted from the application

[2]Fox v. Atwood-Larson Co. 203 Minn. 245, 280 N. W. 856; Erickson v. Erickson & Co. 212 Minn. 119, 2 N. W. (2d) 824; Kayser v. Carson Pirie

of the dominant-purpose test[3] in Olson v. Trinity Lodge, 226 Minn. 141, 146, 32 N. W. (2d) 255, 258, wherein we said:

"If a movement on the part of an employe is undertaken from a mixture of motives, the major motive or dominant purpose thereof, as a general rule, controls in determining whether an injury sustained in the course of such movement arises out of and in the course of his employment."

The authoritative scope of the dominant-purpose rule becomes clear if we keep in mind the controlling facts to which it was applied in the Olson decision. In that case, the employe had but a *single destination, namely, the lodge building,* to which he was en route for the two distinct or dual purposes of (1) personally enjoying the comforts of his private rent-free room, and (2) tending the employer's furnace. If either purpose had been eliminated, the trip to the lodge building would, nevertheless, have been made because of the remaining purpose. It therefore became pertinent to ascertain which purpose was dominant. Obviously, the dominant purpose was the employment, in that the cold January weather created an immediate and compelling necessity for tending the furnace, which had not been taken care of since morning. No deviation or detour was involved, and therefore the dominant-purpose test, without qualification, was both sufficient and decisive. Cf. Erickson v. Erickson & Co. 212 Minn. 119, 2 N. W. (2d) 824.

■■■ In keeping with our former decisions,[4] where a principal movement or errand of an employe is accompanied by a deviation or detour therefrom, the dominant-purpose test should be used for the

---

Scott & Co. 203 Minn. 578, 282 N. W. 801; State ex rel. Niessen v. District Court, 142 Minn. 335, 172 N. W. 133; Lunde v. Congoleum-Nairn, Inc. 211 Minn. 487, 1 N. W. (2d) 606; Engsell v. Northern Motor Co. 174 Minn. 362, 219 N. W. 293; Callaghan v. Brown, 218 Minn. 440, 16 N. W. (2d) 317; Bellman v. Northern Minn. Ore Co. 167 Minn. 269, 208 N. W. 802.

[3]See, Matter of Marks v. Gray, 251 N. Y. 90, 167 N. E. 181. In accord, see Loucks v. R. J. Reynolds Tobacco Co. 188 Minn. 182, 246 N. W. 893; Lindell v. Minnesota Am. Legion Pub. Co. 208 Minn. 415, 294 N. W. 416; Kayser v. Carson Pirie Scott & Co. 203 Minn. 578, 282 N. W. 801.

[4]See, footnote 2.

limited function of determining, when the principal movement or errand is undertaken from a mixture of motives, whether such principal movement or errand belongs to the employer or to the employe personally.

Of course, if the employment creates the necessity for the principal errand in the sense that it would not have been made in the absence of such necessity, the principal errand unquestionably belongs to the employer, although the employe is serving at the same time some purpose of his own. If, however, the personal business or activities of the employe create the necessity for the principal errand in the sense that it would not have been made if such employe's personal business or activities had been abandoned, the principal errand belongs to the employe, although he is serving at the same time some purpose of the employment. Where the necessity which gives birth to an errand may be ascribed exclusively to either the employment *or* to the employe's personal affairs—that is, the necessity of one to the exclusion of the other—there is no need to consider or give weight to the dominant purpose as a separate and distinct element. We may have a situation, however, such as in the Trinity Lodge case, where a dual-purpose errand would have been made even though one of the purposes, whether it was that of the employment or that of the employe personally, might have been absent, and in that event the element of dominant motive or purpose would become of primary importance in determining to whom the principal errand belonged. When the character of the principal movement has thus once been determined, accidental injuries sustained during a detour or deviation are to be ascribed to the employment or to the employe personally, as the case may be, in compliance with the following rule—which is in accord with our decisions[5]—as stated in Barragar v. Industrial Comm. 205 Wis. 550, 553, 238 N. W. 368, 369, 78 A. L. R. 679:

"* * * it is essential * * * to determine whether, *at the outset,* the trip in question was that of the employer or that of the employee. Having determined that it was the employer's trip, the employee is

[5]See, footnote 2.

engaged in his employer's business and acting within the scope of his employment while going to and returning from the terminus of the trip. If it is the employee's trip, he is not within the scope of his employment while en route to or returning from the terminus of his trip. In case it is the employer's trip and there are any detours for purely personal objectives, such detours must be separated from the main trip and the employee held to be outside the scope of his employment during such detour. *If it is his own trip, then such detours as are made for the purpose of dispatching business for his employer must be held to be within the scope of his employment."* (Italics supplied.)

The recent case of Oestreich v. Lakeside Cemetery Assn. 229 Minn. 209, 38 N. W. (2d) 193, upon which the commission relied, is in complete accord with the above rule. In the Oestreich case, the employe was called on a special errand by his employer. He was to go to a funeral director for his employer, then to the employer's office for further instructions. On his way, he was to pick up some groceries for his personal use "if he had time." Obviously, the employment was dominant, in that it created the necessity for the original departure from his home. His injuries occurred before he had reached any of his destinations. In that decision we said (229 Minn. 213, 38 N. W. [2d] 196):

"* * *· Here, the deviation, if any, occurred after the accidental injury had .happened * * *."

The rule as above stated clarifies the controlling principles applicable to the instant case. Assuming that relator here left the sorority house for the dominant purpose of attending religious services at Temple Israel for her own personal reasons, her accidental injuries, nevertheless, arose out of and in the course of her employment *if at the time of the accident, as a deviation from her own personal mission, she was in the act of going to the drugstore to obtain bandages for her employer.* In the absence of a specific finding as to whether she was on her way to the drugstore for the

purpose of her employment, it becomes necessary to remand the case to the commission for rehearing.

■ Although we have observed that the evidence sustains a finding that relator's intended trip to Temple Israel was for her own individual purpose and not for her employer, we do not say that a finding to the contrary might not possibly be sustained. Upon rehearing, new findings should also be made as to the purpose of her trip to the synagogue, in that the findings heretofore made *may* have been controlled by the erroneous assumption that her contemplated attendance at the synagogue could not be attributed to her employment unless such attendance would be of "material benefit" to the employer. If the employment creates the necessity for an employe's errand, it is wholly immaterial whether such errand is beneficial or detrimental to the employer. Although the term "benefit" may have been used in an entirely different sense, nevertheless, in view of the resulting uncertainty, new findings are necessary.

The matter is remanded to the commission for rehearing and decision in accordance with this opinion. Relator is allowed $250 attorney's fees upon this appeal.

Reversed and remanded with directions.