## HUBERT L. GAGNE v. RUTH ORECK AND ANOTHER, d.b.a. THE FLAME, AND ANOTHER.

122 N. W. (2d) 589.

June 21, 1963—No. 38,781.

*McLeod & Gilmore,* for relators.
*James J. Courtney & Sons* and *Paul J. Louisell,* for respondent.

SHERAN, JUSTICE.

Hubert L. Gagne filed a petition with the Industrial Commission dated February 6, 1961, wherein he claimed that on August 16, 1960, he sustained a compensable personal injury in that he "was assaulted while carrying out regular functions of his employment." The employee claimed to have sustained temporary total disability from August 16 to September 16, 1960; a 30-percent permanent partial disability of his arm; and medical and hospital expense. Issue was joined by the answer of the employer wherein the allegations of injury arising out of and during the course of the employment were denied.

At a hearing before a referee for the Industrial Commission, Gagne, 49 years of age, testified that he had been employed at the "Flame" in Duluth as manager, his obligation being "to see that the operation is running smoothly." At about 1:30 a. m. on the morning of August 16, approximately one-half hour after the sale of food and liquor had been discontinued, Gagne observed that two of the women customers, whose presence he had noted at the Flame during the course of the evening, were about to leave and that one of them appeared to be "unsteady on her feet." He was uncertain as to whether she was capable of driving. He accompanied the women, one of whom entered her car and drove away. Then, according to Gagne, he walked across the street with the other to a lot maintained by the Flame where her car was parked. He opened the door and she got in. He testified:

"* * * At that time I still wasn't sure or certain if I was going to let her drive or not so I got inside the car and of course I looked at this car, I wasn't accustomed to this kind of car and I was looking at the way to drive it and the way to start it when two men came from—I don't know where, they had lead pipes and poked at me with these pipes. From then on it was pretty vague, I was beaten pretty badly."

The employee contends that the injuries sustained arose out of and during the course of his employment. He urges that his duties as manager of the Flame included caring for intoxicated persons about to leave the premises for the apparent purpose of driving home. His only reason

for being in the Flame-owned parking lot when he was beaten, he says, was to escort the lady to her vehicle and to drive with her if her state of inebriacy made this assistance necessary. Gagne's claim that responsibility for keeping the operation running smoothly includes such assignments finds support in the testimony of James Oreck, "one of the persons involved in the ownership of the Flame," who testified as follows:

"Q. What is the customary methods that you follow, if any, relative to people that you are worried about their ability to get home?

"A. There are occasions where a good customer, particularly a new party, who are inebriated to a point where I don't feel he can drive safely without getting [into] trouble, we will call a cab or have the parking boy take them home and on occasion I have taken people home myself over a period of years, leaving his car on the lot, taking his keys away from the party.

"Q. You heard Mr. Gagne testify here this morning?

"A. Yes.

"Q. And was Mr. Gagne following your instructions relative to the operation on the 16th of August?

"A. To my knowledge."

The referee concluded that the personal injury sustained by the employee arose out of and during the course of his employment. He made no specific finding as to the nature of Gagne's activity when assaulted. Upon appeal to the Industrial Commission the matter was heard by two commissioners only. The third commissioner, who was appointed subsequent to the hearing of the appeal, took no part in the determination thereof. There was an affirmance, with one of the commissioners in agreement with the conclusion of the referee that the accident arose out of and during the course of the employment of Gagne and the other commissioner convinced that the presence of the employee in the parking lot was for reasons unrelated to his employment. The commission also did not make a finding of fact specifying the conduct in which Gagne was engaged when he received the beating and we do not.

interpret a comment in the opinion of Commissioner James Pomush[1] as such a finding.[2]

The lady whom Mr. Gagne claimed he was assisting gave this description of the episode:

"We walked across the street to my car and he opened the car and I got in and he leaned in the car and kissed me and he said, 'just a minute,' he had to go back to the Flame and lock up and get his coat or whatever and he came back and got in behind the wheel and he kissed me several more times."

It was about this time that the assault occurred. The details appearing in the record are not at all clear. It is possible that the husband of the patron may have been directly or indirectly involved. Gagne denied the osculation described by the woman. Whatever the reason, he was beaten severely.

If it is true, as Gagne claims, that his sole purpose in going to the automobile of the woman customer was to determine the state of her sobriety, and, if necessary, to drive her home; and if this was a practice approved by the management of the Flame, as indicated by James Oreck, one of the owners, the unprovoked beating resulted from a situation in which the employee was placed by the necessities of his employment.[3] If his purpose in going to the parking lot was not so motivated, the result could be otherwise. If the conduct described by the woman customer

---

[1]While there is no specific finding by the referee as to the nature of Gagne's activity when he was assaulted, his memorandum indicates belief in Gagne's claim that he was assisting an intoxicated customer. Commissioner Pomush, in his opinion appended to the decision affirming the findings and determination of the referee, includes the comment: "I assume Mrs. —'s testimony of Gagne's kissing her is true." However, he also stated: "He apparently was assaulted because he was sitting in the car with an unescorted woman who he was considering taking home * * *."

[2]See, Barlau v. Minneapolis-Moline Power Imp. Co. 214 Minn. 564, 9 N. W. (2d) 6; Minn. St. 15.0422 and 176.431; Rule 18, Rules of Practice, Minnesota Industrial Commission.

[3]Hanson v. Robitshek-Schneider Co. 209 Minn. 596, 297 N. W. 19; Ohlsen v. J. G. Dill Co. 222 Minn. 10, 23 N. W. (2d) 15.

occurred as she claimed it did and the injury resulted from it, the employee would not be entitled to compensation.[4]

It is not to be overlooked that this record contains evidence which suggests that the lady's husband may have been involved in the assault on the person of Gagne. In the event of criminal or civil proceedings against him, the version of the incident as given by his wife would tend to give some excuse for the treatment to which Gagne was apparently subjected. The record indicates that this relationship of husband and wife continued as of the time of the hearing before the referee. Consequently her version is not that of a wholly disinterested person. She had consumed numerous drinks during the course of the evening. Her testimony, considered as a whole, is not so accurate or persuasive as to compel rejection of the testimony of the employee.

Because we lack a finding on the issue of fact determinative of the appeal, the case is remanded to the Industrial Commission for its decision as to whether Gagne was assaulted because he was assisting the lady to get home safely in furtherance of his employer's business. If so, the employee is entitled to compensation. If he was in pursuit of amour, his mission was personal. We do not believe the Workmen's Compensation Act was intended to insure against the consequences of such ventures.

Reversed and remanded for further proceedings consistent with this opinion.

---

[4]Sivald v. Ford Motor Co. 188 Minn. 463, 247 N. W. 687; Bluegrass Pastureland Dairies v. Meeker, 268 Ky. 722, 105 S. W. (2d) 611; Goodland v. L. S. Donaldson Co. 227 Minn. 583, 36 N. W. (2d) 4; Cunning v. City of Hopkins, 258 Minn. 306, 103 N. W. (2d) 876.