## HENRY C. MILLS v. STANDARD PARTS SERVICE COMPANY AND ANOTHER.

131 N. W. (2d) 546.

November 25, 1964—No. 39,370.

*John R. Parker,* for relator.

*Ryan, Ryan & Ebert* and *Donald I. Ryan,* for respondents.

502

Sheran, Justice. ·

Certiorari to review a decision of the Industrial Commission. On January 6, 1960, at about 1:45 p. m., Henry C. Mills, vice president and general manager of Standard Parts Service Company, fell and was injured while crossing the intersection of Laurel and Sixth Streets in Brainerd, Minnesota. He petitioned for compensation, claiming that the accident arose out of and during the course of his employment. A finding of an Industrial Commission referee that the injury did not arise out of and during the course of petitioner's employment was affirmed by the Industrial Commission[1] and compensation was denied. The question for decision is whether this determination is sustained by the evidence.

During the morning of January 6, Mr. Mills worked at a location used by the employer located on Seventh Street in the city of Brainerd. Pursuant to arrangements for a luncheon meeting made by phone, he left Mills Motor Company at about noon and walked to the Elks Building located on the northeast corner of Laurel and Sixth Streets where a restaurant is located. After lunch and at about 1:45 p. m., he left the Elks Building and walked westerly across Sixth Street to the northwest corner of the intersection. Then he started south across Laurel, intending to go to the southwest corner of the intersection and from there west to his employer's store located on the south side of Laurel between Fifth and Sixth Streets. It was as he walked across the street that he fell and was injured.

The employee contends that he was in the course of his employment because the dominant purpose of the luncheon was to discuss matters relating to his employment. He also contends that whatever the purpose of the luncheon, when he was hurt he had the employment-related objective of walking from one of his employer's business sites to another. He cites Kaplan v. Alpha Epsilon Phi Sorority, 230 Minn. 547, 42 N. W. (2d) 342, and Locke v. County of Steele,

---

[1] Commissioner James Pomush did not participate in the determination of the case, and Commissioners Ramberg and Intihar disagreed as to its disposition.

223 Minn. 464, 27 N. W. (2d) 285, as controlling in support of his claims.

The evidence does not compel a finding that the dominant purpose of the meeting was business connected. The employee and William Graham, with whom he lunched, testified that the arrangement to meet was made in order to discuss the company insurance program in preparation for an anticipated annual audit on January 15, and that following lunch they did in fact discuss company insurance and a business loan by Standard Parts Service Company from the First Federal Savings and Loan Association of Brainerd, of which Graham was president and loan officer. But this testimony of both Mills and Graham was weakened by cross-examination. And in a postaccident statement concerning the event, made by Mills to a representative of Standard Parts Service Company's compensation insurer in the presence of Graham, no mention was made of any acts upon which a finding that the luncheon meeting was business orientated could be premised. Mills, Graham, and others met regularly at the Elks Club for lunch for purely personal reasons. The referee could reasonably have found that the dominant purpose of the luncheon meeting was personal and that any discussion of insurance and other matters which may have occurred was purely incidental.

If the dominant purpose of the luncheon meeting was personal, Mills was not in the course of his employment when he slipped. Even though it be reasoned that the luncheon meeting represented deviation from a business-connected walk from one store location to the other, Mills would not have returned to the direct route between these places of business until he reached the south curb line of Laurel. He was hurt at a place where he would not have been if the direct route had been followed.

In Locke v. County of Steele, 223 Minn. 464, 27 N. W. (2d) 285, the rule that an employee injured on his way to or from work during his lunch hour is not entitled to the benefits of the compensation act was recognized. Nevertheless, the conclusion of the Industrial Commission that the injury arose out of and during the course of employment was affirmed where the facts were that the employee was en

route from her home, where she had gone for lunch, to the post office, where she was to pick up mail pursuant to specific instructions from her employer. In that decision the court emphasized that (223 Minn. 469, 27 N. W. [2d] 288):

"* * * The true test in determining employe's coverage under the act was not the route she happened to be following at the time of her injury,[2] but her presence *at a place where,* and *during the time when,* her services were required to be performed under her employment contract.

\* \* \* \* \*

"* * * [H]ere, at the time of the accident, employe's lunch hour had actually ended, and her required daily services for her employer had been resumed, to the complete exclusion of her own personal affairs."

In the Locke case the Industrial Commission found in the employee's favor; in this case the employer prevailed before the Industrial Commission. In the Locke case the accident, while occurring on the street, happened at a time when the employee was engaged in a required duty of her employment. She had no object in going to the post office except to serve her employer. Here, if we accept the finding that the luncheon conversations concerning business were only incidental to a meeting for social purposes, the situation is essentially the same as that of the employee in Callaghan v. Brown, 218 Minn. 440, 16 N. W. (2d) 317, where the street accident involved was held to be noncompensable.

It is our conclusion that the decision of the Industrial Commission has reasonable support in the evidence and should be affirmed.

Affirmed.

---

[2]The place of the accident in the Locke case was between the employee's home and the post office and not on what would be a direct route between the post office and the place where she worked. However, the work arrangement, confirmed by a practice of long standing, contemplated that the trip to the post office be included in the daily assignments of the employee.