## ANN A. FALKUM v. DANIEL STARCH & STAFF AND ANOTHER.

135 N. W. (2d) 693.

May 28, 1965—No. 39,547.

*William J. Nierengarten,* for relator.

*Firestone, Fink, Krawetz, Miley & O'Neill* and *Kenneth J. Maas, Jr.,* for respondents.

FRANK T. GALLAGHER, C.

Certiorari to review a decision of the Industrial Commission denying Ann A. Falkum, employee-relator, compensation on the grounds that the personal injury she sustained in an automobile accident did not arise out of and in the course of her employment.

The employee was approximately 58 years of age at the time of the accident and resided in Austin, Minnesota, about five blocks from where the accident occurred.

She commenced work with Daniel Starch & Staff, New York business research consultants, employer-respondent, about the middle of March 1960. She was hired to interview people in their homes. Her remuneration consisted of $1.50 per hour for interview time, $1.25 per hour for editing and making out her reports, and 8 cents per mile for her travel expense. Interview time was compensated on a portal to portal basis, i. e., from the time she left home until she returned.

On the day of the accident, May 13, 1960, the employee left her home about 8 a. m. for the purpose of interviewing people on a survey. She went east of Austin on Highway No. 16, making several stops and setting up an interview for that evening. She had her first interview between 10:30 and 11 a. m. at a home where she also stayed for lunch. She left that place at about 1:15 p. m. She stopped at the homes of several prospects for interviews on her return trip but found none available for interview. At about 2:15 p. m. on her way back home she turned a short distance off the route she was traveling and made a stop at Nelson's Supermarket, where she purchased a loaf of bread and allegedly some postage stamps—which claim is disputed— from a postal station located within the store.

It appears from the record that after making her purchase or purchases at the market, she was in the process of driving her car out of

the driveway when another car struck her car from behind. Although the incident occurred within the market parking-lot area, the blow was apparently severe, as evidenced by the fact that the employee was thrown against the steering wheel and suffered injuries for which she seeks workmen's compensation.

The referee found that the employee sustained a personal injury arising out of and in the course of her employment and awarded her compensation. On appeal, the commission in a unanimous decision reversed the referee.

In her appeal from the decision of the commission, the employee raises the issue as to whether the commission may reverse a finding of fact by the referee when, according to her, the evidence preponderates in favor of the referee's findings.

It is the commission's findings and not the referee's that this court considers on review. Yureko v. Prospect Foundry Co. 262 Minn. 480, 115 N. W. (2d) 477.

The commission's decision seems to turn on whether the employee actually deviated from the course of her employment to go to Nelson's Supermarket. At the hearing before the referee the employee testified that she went to Nelson's for the purpose of purchasing postage stamps for her work but while there decided also to purchase bread for her personal use. Employee's testimony was impeached, however, by written statements which she signed and gave to insurance adjusters subsequent to the accident.

The employee gave a signed statement on June 2, 1960, to the insurer of the other car involved stating that she went to the store and "proceeded to buy my groceries" and then went to her car. No mention of stamps was made in the *original* statement, which was received in evidence, although she testified at the hearing that the statement was corrected and the word "stamps" was inserted therein. In support of this claim, according to the commission's opinion, a *copy* of the original statement was received in evidence, upon which was written "stamps and" before the word "groceries." That correction did not appear on the original. Both the employee and the claims man for the insurer said it was not in their handwriting.

The employee gave a second signed statement on September 22, 1960, to a claims representative of insurer-respondent. The pertinent provision in that statement is: "When I got near Nelson's Grocery, I decided to stop for a loaf of bread. I pulled into their parking lot and stopped my car. I then went into the store and bought one loaf of bread and went back into my car." The original of this statement made no reference to stamps. The employee introduced a copy of that statement upon which the word "stamps" had been inserted in two places. It was her testimony that the agent for the employer's insurer either did or was supposed to insert "stamps" on the original. However, there is no indication the word ever appeared on the original, and the agent testified stamps were not mentioned.

A further consideration is that employee was required to keep a record of the time she worked, the type of work accomplished, and expenditures made. The report for the period extending from May 13 through May 21, 1960, indicates only one expenditure, which was for a clipboard. There was no mention of stamps. The report further shows that on May 13, 1960, she worked from 8 a. m. to 11 a. m. Her explanation is that the report is not complete.

With reference to the above, the commission stated:

"The difficulty with the petitioner's [employee] testimony in regard to the statements and records is that, in its best light, we find confusion. * * * the petitioner's confused testimony as to how the word 'stamps' appeared on the copies and presumably (but not actually) on the original, does not permit us to rely on her testimony. We cannot be very sure that she remembers all of the events correctly. Her failure to record stamps (although the clipboard is noted), and probably some hours worked, does not help to correct this impression. We therefore must conclude that the evidence does not establish that she either went to Nelson's Supermarket for stamps, or did purchase stamps there."

The commission decided that the accident occurred during the time that the employee deviated from her course; that it had no relationship to her employer's business; and that her deviation "was of

such a character that it should not reasonably be deemed to have arisen out of and in the course of employment."

The issue as to employee's motive for going to Nelson's Supermarket is one of fact and the findings relative thereto by the Industrial Commission will not be disturbed if they have sufficient basis in the evidence and in the inferences to be drawn from the evidence. Casey v. Northern States Power Co. 247 Minn. 295, 77 N. W. (2d) 67; 21 Dunnell, Dig. (3 ed.) § 10426(13). It is our opinion that the Industrial Commission's finding on this point is sustained by the evidence and it will not be disturbed.

The employee contends that her employment involved necessary travel and since she was paid on a "portal to portal basis" a physical deviation of a few feet while on such travel for the purpose of purchasing a loaf of bread is not such a deviation as to take her out of the course and scope of her employment. The record does not show that her deviation was just a few feet but instead indicates that she drove off the highway into the parking-lot area, which would necessarily involve more than a few feet.

In support of her position, employee cites Marks v. Gray, 251 N. Y. 90, 167 N. E. 181; Oestreich v. Lakeside Cemetery Assn. 229 Minn. 209, 38 N. W. (2d) 193; Kaplan v. Alpha Epsilon Phi Sorority, 230 Minn. 547, 42 N. W. (2d) 342.

In Marks v. Gray, *supra,* a plumber's helper, intended to go to Shortsville, a neighboring town, to get his wife. Upon learning of this, his employer informed him that there was a customer residing in Shortsville whose home contained leaky faucets and asked the employee to fix them while there. It appears that the work was of a trifling nature which would take but 15 or 20 minutes to perform and would therefore not warrant an independent journey. While en route to Shortsville, the employee was involved in a collision and was killed. The court reversed the trial court and held that the employee's family was not entitled to compensation as he was not killed while in the scope of his employment. In reaching his conclusion, Mr. Justice Cardozo reasoned that the service to the employer was not a concurrent cause of the trip, in that the trip would have been made even if the em-

ployer had not asked him to repair the leaky faucets, and therefore the trip was of a personal nature. The court commented that if the employee had been injured while repairing the defective faucets, then a different question would arise. We do not consider the Marks case as precedent for the situation here. In this case, we assume that employee's travel was motivated by business interests and therefore we are now concerned with the question: When she left the main route to her home in order to purchase bread, did she remove herself from the scope of her employment?

In Oestreich v. Lakeside Cemetery Assn. *supra,* a gravedigger was injured while acting under instructions of his employer to go to a funeral director to get measurements for a vault and then to his employer's office for further instructions. Before he left home, his wife requested him to purchase some lard and yeast "if he had time." The employee slipped and fell on an icy street and sustained head injuries *before* he even reached the undertaker's establishment, the store, or his employer's office, and he died therefrom *after* he had completed his mission to all three places. We held there that obviously the employment was dominant, in that it created the necessity for the original departure from his home, and that "the deviation, if any, occurred after the accidental injury had happened." In the instant case the employee was injured while engaged in a personal deviation and therefore this case is distinguishable.

Both parties cite Kaplan v. Alpha Epsilon Phi Sorority, *supra,* as controlling. In that case, a sorority housemother left the sorority house for a twofold purpose. One of her reasons was to obtain bandages for the use of the residents in the sorority house. Upon completion of that errand, she planned to board a streetcar which would take her to a synagogue where she was going to attend religious ceremonies. While on her way to the drugstore she slipped and sustained injuries, for which she sought workmen's compensation. The Industrial Commission denied her compensation on the theory that she was not within the scope of her employment at the time she sustained injury. We stated that assuming that the employee left the sorority house for the dominant purpose of attending religious services, her accidental injuries still

arose out of and in the course of her employment "if at the time of the accident, as a deviation from her own personal mission, she was in the act of going to the drugstore to obtain bandages for her employer." In the absence of a specific finding as to whether the employee was on her way to the drugstore for the purposes of her employment, we remanded the case to the commission for a rehearing. That case differs from the instant one because here the commission found that the accident occurred during the deviation and had nothing to do with the employer's business.

It is our opinion that the decision of the commission should be affirmed.

Affirmed.