## ELMER E. HILL v. TERRAZZO MACHINE & SUPPLY COMPANY AND ANOTHER.

157 N. W. (2d) 374.

March 15, 1968—No. 40,680.

*Carroll, Cronan, Roth & Austin* and *Thomas A. Foster,* for relators.
*Daniel B. Gallagher,* for respondent.

MURPHY, JUSTICE.

Certiorari to review an award of the Industrial Commission. Relators urge that the referee and commission were in error in awarding

compensation for injuries allegedly incurred outside the scope and course of employment.

The record would support the commission's determination that the employee, as a matter of routine and personal habit, generally arrived at his employer's place of business at approximately 6:45 a. m. to assume his duties as a drill press operator. In practice, he would punch the time clock as soon as he arrived but would not actually get paid until 7 a. m. He would then normally work until 3:30 p. m. Before beginning to operate his drill press he cleaned machines, swept the office, and emptied wastepaper baskets, often starting this work before 7 o'clock.

On January 11, 1965, he arrived at work and punched the time clock at 6:45 a. m. He was about to go to the locker room and remove his outer coat when he noticed that he had neglected to mail a card. He decided to mail it in a public mailbox on the street and, accordingly, walked out the door of the shop building, proceeding about 10 feet, and fell on snow or ice about 3 feet from the corner of the building but upon the employer's premises. He sustained a fractured hip and other injuries for which he sought, and was awarded, compensation. Relators contend that the injury occurred while the employee was engaged in a personal errand unrelated to his employment and that he is, therefore, not entitled to compensation.

Minn. St. 176.011, subd. 16, provides in part:

" 'Personal injury' means injury arising out of and in the course of employment * * *; but does not cover an employee except while engaged in, on, or about the premises where his services require his presence as a part of such service at the time of the injury and during the hours of such service."

We have repeatedly said that the language of the Workmen's Compensation Act is to be given a broad and liberal construction. Olson v. Trinity Lodge, 226 Minn. 141, 32 N. W. (2d) 255. It is unnecessary to sort out and categorize the numerous decisions of this court as they relate to the terms "arising out of" and "in the course of employment" as they bear upon the causal connection

between employment and injury. "As applied in some factual situations * * *, the two concepts are so closely interwoven that an attempt to adhere to technical distinctions serves little purpose." Lange v. Minneapolis-St. Paul Metropolitan Airports Comm. 257 Minn. 54, 56, 99 N. W. (2d) 915, 917. Since it is contended that the accident occurred outside of working hours and while employee was engaged in a personal activity, we must concern ourselves with the application of the last part of the statute, which provides that the employee is protected "while engaged in, on, or about the premises where his services require his presence as a part of such service" and "during the hours of such service." It is conceded here that the accident occurred on the employer's premises, but it is denied that it occurred at the place of employment and during the time when the employee was required to perform services under the employment contract. We have in innumerable authorities discussed varying situations wherein an employee was either allowed or denied compensation where this issue was presented. The authorities are gathered and discussed in the more recent cases of Johannsen v. Acton Const. Co. Inc. 264 Minn. 540, 119 N. W. (2d) 826, and Blattner v. Loyal Order of Moose, 264 Minn. 79, 117 N. W. (2d) 570. Our approach to the issue of whether the injury arose as a part of the service or during the hours of service has been guided by Novack v. Montgomery Ward & Co. 158 Minn. 495, 198 N. W. 290, and Simonson v. Knight, 174 Minn. 491, 219 N. W. 869, two of the early and leading decisions which express the spirit and policy of the Workmen's Compensation Act.

The Simonson case involved a petition for compensation by a restaurant employee who customarily entered the place of employment through the back door. While on her way to work she fell in an open excavation located in the rear of the employer's premises and sustained the injury for which compensation was sought. We there held that the Industrial Commission was in error in holding that the injury occurred before the employee had reached the working premises. We pointed out that an injury to a workman might be compensable

even if the workman is not actually working at the time of the injury. We said (174 Minn. 493, 219 N. W. 870):

"* * * The controlling idea is that the hazard is localized on and peculiar to the place of employment rather than detached therefrom and so generalized to the community at large."

The decision emphasized that the statute is not to be given a restricted construction and that the hours of service "include the period of reasonably prompt ingress and egress while still upon the immediate premises." We further noted, "Many an industrial accident, arising from a cause peculiar to the employment, occurs just outside the time of actual labor and at a moment not within the period covered by the victim's wages; yet it arises out of and because of the employment." 174 Minn. 494, 219 N. W. 870. In stressing that a compensable accident may occur either before or after the actual time for which the employee is paid, we said (174 Minn. 495, 219 N. W. 870):

"* * * So, although their day of wages and actual work may not have commenced or may have ended, what is real service has begun or continues; and an accident happening at such time may be said to be in the hours of service."

These principles have been consistently followed by the decisions of this court and applied with varying results, depending upon the particular facts in each case. As applied to the facts before us, it may be said that the commission could well find that the workman was injured on the employer's premises at a time after his services began. It may further be observed, in passing, that if the workman had fallen at the same place as he was entering the premises on his way to work, the compensability of his injury would be controlled by Simonson v. Knight, *supra,* and the determination of the Industrial Commission would undoubtedly be right. The question presented here is whether the workman took himself out of the protection of the act by momentarily leaving his employment and using the few minutes left before actual work began to go out to the street to place a letter in the mailbox.

In Falkum v. Daniel Starch & Staff, 271 Minn. 277, 135 N. W. (2d) 693, we affirmed the determination of the Industrial Commission that an employee of a business research consultant firm, who was injured in a car accident in the parking lot of a supermarket after she had finished her day's work, was not covered by workmen's compensation. We held that there was sufficient evidence to sustain the finding that although she was employed and paid on a "portal to portal basis" the fact that she had deviated to shop at the market was such a departure from her employment as to remove her from the protection of the act. On the other hand, in Blattner v. Loyal Order of Moose, *supra,* we affirmed the commission's decision that an employee injured while leaving the premises of his employer an hour after his work had been completed was within the protection of the Workmen's Compensation Act.

More pertinent to the fact situation presented here are those authorities which relate to injuries occurring to employees while engaged in activities in the nature of a deviation from the strict course of duties which they are hired to perform, where such deviations are in the interests of the employees' personal comfort and convenience. In Kaletha v. Hall Merc. Co. 157 Minn. 290, 294, 196 N. W. 261, 262, where an employee, pausing in his work, lit a cigarette, as a result of which an accident occurred causing him to be severely burned, we said:

"The procuring of food or other refreshments by an employe, although personal in character, is considered so far incidental to the employe's work, that injuries received while procuring such food and refreshments may be found to arise out of and in the course of the employment; provided the employe acts in a reasonable and prudent manner, and the injuries occur while he is upon the employer's premises or is subject, as an employe, to the employer's control."

In McKenzie v. Railway Exp. Agency, Inc. 205 Minn. 231, 285 N. W. 529, an employee, while seeking protection from the cold, entered a baggage car where he was exposed to hazards which caused his injuries. We affirmed an award of compensation there over the conten-

tions of the employer that the accident occurred on premises not under the control of the employer and during a time when the employee had departed from his line of duty for personal convenience and desires which were not incident to the employment. We have held that injuries occurring off the employer's premises during a regular lunch hour may arise in the course of employment even though the interval is technically outside the regular hours of employment in the sense that the worker receives no pay for that time and is in no degree under the control of the employer, being free to go where he pleases. Johannsen v. Acton Const. Co. Inc. *supra;* cf. Krause v. Swartwood, 174 Minn. 147, 218 N. W. 555, 57 A. L. R. 611.

It seems to be well established that acts of an employee necessary to life, comfort, or convenience while at work, although personal to him and not technically acts of service, are incidental to the service, and an injury arising while in the performance of such acts is compensable. 1 Larson, Workmen's Compensation Law, § 19.63; 99 C. J. S., Workmen's Compensation, § 220; Maheux v. Cove-Craft, Inc. 103 N. H. 71, 164 A. (2d) 574; Harlow's Case, 345 Mass. 765, 186 N. E. (2d) 925; Bator's Case, 338 Mass. 104, 153 N. E. (2d) 765.

We conclude that, on the basis of the record before us, the incident out of which the injuries arose was not a departure from work but a minor interruption from work which might reasonably be expected in the course of a day's activities. It is only realistic to say that a workman does not move mechanically in precise and definite work patterns, and it may be expected that he will from time to time perform acts which are not necessarily in the nature of service to the employer. We conclude that since the conduct from which the injuries arose was such as reasonably might be expected, and since it was not expressly forbidden, it was not such a departure from the course of his service or the performance of his duties as to deprive him of the benefits of the compensation act.

Affirmed.

OTIS, JUSTICE (dissenting).

I cannot agree that the compensation act was intended to confer benefits on an employee whose injury did not occur in the course of his employment nor while he was engaged in any personal mission permitted by the terms of his employment agreement. As I read the cases, we have ruled squarely the other way in a line of decisions commencing with Callaghan v. Brown, 218 Minn. 440, 16 N. W. (2d) 317, up to and including Mills v. Standard Parts Serv. Co. 269 Minn. 501, 131 N. W. (2d) 546.

When this employee left the premises prior to the time his work began, his only purpose was to deposit in the mailbox the crossword puzzle he had worked out for his own benefit. It is true that he was injured while still on the premises, but no case holds that this in itself is sufficient to bring an employee under the act. Injuries occurring during an errand personal to the employee do not give rise to benefits unless the activity has become a fixed custom which amounts to a condition of employment.

In the Callaghan case we denied compensation to the widow of an employee killed by an automobile while going to a lunch counter during a coffee break, a practice he had followed for some 30 years. We stated (218 Minn. 441, 16 N. W. [2d] 318):

"* * * The accident to deceased occurred within the period of his employment, but he was not at the time in the performance of any duty owing to his employer. He was not at a place where his duties required him to be. His death cannot in any way be traced to the nature of his employment nor to a risk to which his employer's business exposed him. He was where he was solely in furtherance of his own personal desires and accommodation. There was no causal connection between his employment and the exposure to the risks which caused his death. He did not fall within any of the special exceptions which extend the coverage of the compensation law. He was not a traveler in the course of his employment, nor did he have any mission of the employer to fulfill in connection with his personal errand.

The performance of his duties to his employer did not require him to go upon the street."

We have cited the Callaghan case with approval in a number of subsequent decisions.[1]

In Locke v. County of Steele, 223 Minn. 464, 27 N. W. (2d) 285, we allowed compensation where the employee went to the post office as a part of her duties with her employer. There we stated (223 Minn. 469, 27 N. W. [2d] 288):

"* * * The true test in determining employe's coverage under the act was not the route she happened to be following at the time of her injury, but her presence *at a place where,* and *during the time when,* her services were required to be performed under her employment contract."

We distinguished the Callaghan case in Sweet v. Kolosky, 259 Minn. 253, 106 N. W. (2d) 908, which also involved a coffee-break situation. There we held that this was a matter of right in the employment agreement and while thus engaged an employee remained within the scope of his employment. However, we pointed out (259 Minn. 256, 106 N. W. [2d] 910):

"* * * Cases where the employee leaves the employer's premises on an errand solely for his own benefit and having no relationship to the employment or the rights or privileges granted under the employment agreement must be distinguished from those, such as the one before us, where a temporary departure from the employer's premises is necessary in order to exercise a right or privilege granted as part of the employment agreement."

Again we cited Callaghan with approval in Johannsen v. Acton Const. Co. Inc. 264 Minn. 540, 119 N. W. (2d) 826, and recognized

---

[1] Rhea v. Overholt, 222 Minn. 467, 471, 25 N. W. (2d) 656, 658; McBride v. Preston Creamery Assn. 228 Minn. 93, 94, 36 N. W. (2d) 404, 405; Kaplan v. Alpha Epsilon Phi Sorority, 230 Minn. 547, 550, note 2, 42 N. W. (2d) 342, 344, note 1. See, also, Note, 46 Minn. L. Rev. 199, 209.

the rule that ordinarily an employee who is injured, either in going to or from the premises of his employer, whether it be during a lunch hour or before or after his work actually commences or ceases, is not entitled to the benefits of the act unless he is engaged in a service for his employer while so traveling.[2] We there concluded by stating (264 Minn. 549, 119 N. W. [2d] 831):

"* * * It is only reasonable to conclude that an employee is within the protection of the act as long as he is exposed to a hazard causally connected with the employment and peculiar to it. This does not mean that the protection will continue when he has entered the avenues of travel where he is exposed to no work-connected hazard or any hazard greater than that to which all others not so employed are exposed."

In my opinion, Gagne v. Oreck, 266 Minn. 1, 122 N. W. (2d) 589, governs. We there held that an employee assaulted while still on the premises would not be entitled to compensation if he was injured while making advances to a patron, which we pointed out would not be in furtherance of his employer's business but would be entirely personal.

Finally, in the recent case of Mills v. Standard Parts Serv. Co. 269 Minn. 501, 131 N. W. (2d) 546, we again approved the Callaghan case in denying compensation. We also distinguished the Locke case, observing that there the employee had no object in going to the post office except to serve her employer, in contrast to the case at hand.

In summary, I respectfully submit that the risk to which this employee was exposed had absolutely no bearing on his employment and was not an implied or express condition of his employment agreement, as in the coffee-break cases, and that to allow recovery will

---

[2] "Although a reasonable interval is allowed before actual working time during which an injury would normally be compensable, a personal deviation at this point can of course break the link with employment. For example, the course of employment is suspended if an employee, having arrived early, starts out the door for a coffee break even before beginning work." 1 Larson, Workmen's Compensation Law, § 21.60.

extend compensation for every conceivable injury occurring on the employer's premises.

While it may well be that the employee has a good common-law cause of action for negligence against his employer for maintaining the premises in an unsafe condition, that is not a matter now before us. For the reasons stated, I would reverse.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.